Joseph H. Baker et al., Appellants,

*v.*

Nashville Housing Authority, Appellee.

408 S.W.2d 651.

(*Nashville,* December Term, 1965.)

Opinion filed November 15, 1966.

ELKIN GARFINKLE, Nashville, for appellants.

THOMAS H. SHRIVER and HARRY L. MITTWEDE, Nashville, for appellee.

MR. SPECIAL JUSTICE WILLIAM J. HARBISON delivered the opinion of the Court.

In this case the sole question presented is the proper award of interest to a property owner whose property has been condemned by a Housing Authority.

The facts of the case are undisputed. On December 15, 1965, the Nashville Housing Authority filed a petition condemning certain property belonging to Mr. and Mrs. Joseph H. Baker, in Nashville, Tennessee, for use in the development of an urban renewal project in East Nashville. On the same date, a declaration of taking was filed by the Nashville Housing Authority, which stated in part:

Under the provisions of Title 23, sec. 1507, Tennessee Code Annotated, your petitioner is authorized and empowered to take the within described property before the entry of final judgment, or at any time on or after the filing of its petition for condemnation.

The petition alleged that the sum of $55,000.00 was fair and just compensation for the property described, and averred that said amount had been deposited in the hands of the Clerk of the Circuit Court of Davidson County, Tennessee,

* * * for the use of the defendants or such persons as may be entitled thereto, as their interests may appear, as compensation for the said property.

On December 21, 1965, an order was entered in the Sixth Circuit Court of Davidson County, Tennessee, sustaining the condemnation, and appointing a jury of view to appear on January 4, 1966. The decree further recited the payment of the sum of $55,000.00 into court, pursuant to the declaration of taking "as provided in Title 23, sec. 1507, Tennessee Code Annotated," and the decree divested all right, title and interest of the defendants to

the subject property and vested absolute fee simple title in the Nashville Housing Authority. The decree authorized the Clerk of the Court to furnish proper evidence of title to the condemning authority; authorized the issuance of a writ of possession to put the Housing Authority in possession of the real estate on or after January 4, 1966; and referred the matter to the Clerk for determination of any taxes due. The decree further transferred all liens of the defendants or liens for taxes to the funds in the hands of the Clerk. It concluded as follows:

Upon the incoming of the Clerk's Report upon this reference, the Court will enter an order of disbursement for the payment of liens, if any, and taxes, *and the balance of the funds will be held subject to further orders of the Court for the use and benefits of the defendants, as their interests may appear.* (Emphasis supplied.)

The jury of view was duly empaneled, and on January 26, 1966, filed its report fixing the fair value of the property at $60,000.00. The $5,000.00 deficiency was paid into court on February 26, 1966.

While it appears that the Housing Authority on two occasions made motions to confirm the report of the jury of view, a final order confirming the report of the jury of view was not entered until March 31, 1966. This order recited that the report of the jury of view was unexcepted to and that neither party desired to appeal the findings of the jury of view. The report of the jury of view was accordingly confirmed. The decree recited that the Housing Authority had already paid into the Registry of the court the sum of $60,000.00 which was due to the defendants, and accordingly the Authority was

awarded an indefeasible title to the condemned property in fee simple. The order also again authorized a writ of possession and the furnishing of evidence of title by the Clerk. The order recited that the Clerk had reported that there were no taxes due. It recited that the parties were in dispute as to the amount of interest due the landowners, and contained a finding by the court that the Housing Authority was required to pay interest on the entire award of the jury of view, including the sum deposited with the Clerk, at the rate of 6% per annum. The court allowed interest, however, only from January 4, 1966, the date possession was given to the Housing Authority, to January 31, 1966,

* * * the date the Order confirming the Report of the Jury of View could reasonably have been entered, the Jury of View having filed its report on January 26, 1966.

Interest in the amount of $269.04, calculated as above stated, was awarded, and both parties excepted to the ruling as to interest. The property owners perfected an appeal in the nature of a writ of error, and the Housing Authority has filed the record for review on writ of error.

It is the insistence of the Housing Authority, with whose appeal we shall first deal, that the property owners had the right to withdraw the $55,000.00 paid into court at the time of its deposit in court, upon showing that they were the persons entitled to the money, and that, therefore, interest should not have been allowed on the amount thus deposited. It is argued that the order of the court entered December 21, 1965, resolve any doubt as to the parties properly entitled to the award, and that

the property owners had the right to withdraw the $55,000.00 deposit at any time after that date. It is insisted that the property owners cannot, by leaving the money on deposit with the court, force the Housing Authority to pay interest on the amount left on deposit. Accordingly, the Housing Authority insists that the property owners were entitled to interest only on $5,000.00, being the deficiency or difference between the amount deposited and the amount ultimately awarded by the jury of view.

The Housing Authority expressly asks this Court to overrule its earlier holding in the case of *Nashville Housing Authority v. Doyle,* 197 Tenn. 555, 276 S.W.2d 722 (1955), in which the contentions now advanced by it were rejected, or to hold this decision no longer applicable by reason of recent statutes. The Housing Authority points out that the State of Tennessee, its counties or municipalities, are authorized by T.C.A. sec. 23-1526 to pay estimated just compensation into court at the time of the filing of a condemnation petition, and that this code section expressly provides that ''no interest shall be allowed on the amount deposited with said clerk.'' The Housing Authority recognizes that T.C.A. sec. 23-1527 provides that the terms of T.C.A. sec 23-1526 ''shall not apply to any housing authority, association, or administration.'' It insists, however, that either it is entitled to the benefit of the provisions of sec. 23-1526, or else there is an unreasonable and arbitrary classification and discrimination by the Legislature against housing authorities if they must pay interest on the entire award, while the State and its subsidiaries are required to pay interest only on a deficiency.

We have carefully examined the record in the present case and the authorities cited by the Housing Authority, and we are unable to agree with its contentions for the reasons hereinafter stated.

The petition for condemnation filed herein states that the Housing Authority has the power of eminent domain under T.C.A. sec. 13-804(16) and other sections of Title 13 of the Code. The petition recites that

> * * * said power of eminent domain may be enforced in accordance with the provisions of T.C.A. sec. 23-1401 to sec. 23-1424, or sec. 23-1507 to sec. 23-1510, or any other applicable law. * * *

The provisions of T.C.A. secs. 23-1401 through 23-1424 deal generally with the power of eminent domain. They provide the procedure long in use in Tennessee, under which a condemner files a petition for condemnation, following which a jury of view is appointed. Upon the filing of its report, the same is either confirmed and the land decreed to the petitioner upon payment to the landowners of the damages assessed, or either party is free to object to the report of the jury of view and request that a new writ of inquiry be awarded. Either party is also allowed to appeal from the finding of the jury of view, and to have a trial before a petit jury. These statutes contain no provision for depositing of funds in court and the immediate acquisition of title and possession pursuant to a declaration of taking. It is apparent from the record filed in the present case that the Housing Authority did not undertake to proceed exclusively under the provisions of T.C.A. sec. 23-1401 et seq.

It is also apparent from the record that the Housing Authority did undertake to proceed according to the pro-

visions of T.C.A. sec. 23-1507 through sec. 23-1510. These sections are the codification of Chapter 183, of the Public Acts of 1937. At that time the general eminent domain statutes did not provide for the condemner to acquire possession of condemned property until confirmation of the report of the jury of view, or until final judgment after trial by petit jury. Chapter 183 of the Public Acts of 1937, however, permitted housing authorities to file a declaration of taking with the clerk of the court in which a petition for condemnation was filed, at any time before entry of final judgment. The declaration of taking was required to contain a description of the property to be condemned, a statement of the interest in the property being taken, and

* * * a statement of the sum of money estimated by the housing authority to be just compensation for the property taken, which sum shall be not less than the assessed valuation for tax purposes of the estate or interest in the property to be taken. Tennessee Public Acts 1937, Chapter 183, Section 1; T.C.A. sec. 23-1507.

There has been no change or amendment in the text of the 1937 Public Act, as the same now appears in Tennessee Code Annotated, sec. 23-1507 through sec. 23-1510. These sections provide that upon the filing of the declaration of taking and the deposit of the funds in court, title to the condemned property shall vest in the housing authority. The court, upon the filing of the declaration of taking, is to designate a day, not later than twenty days after such filing, for the surrender of possession.

The provisions of the 1937 Public Act do not provide that the property owner may immediately withdraw the funds deposited by the Housing Authority. As now codified in T.C.A. sec. 23-1510, the statute provides that

the ultimate amount of compensation "shall be determined pursuant to chapter 14 of this title." This clearly makes reference to the provisions of T.C.A. sec. 23-1401 et seq., above discussed, under which a jury of view is appointed, and from whose report either party may take exception or appeal.

The 1937 statute then provides:

If the amount so fixed shall exceed the amount so deposited in court by the housing authority or otherwise paid to the persons entitled thereto, the court shall enter judgment against the housing authority in the amount of such deficiency, *together with the interest at the legal rate on such deficiency from the date of the vesting of title to the date of the entry of the final judgment,* subject, however, to abatement for use, income, rents or profits derived from such property by the owner thereof subsequent to the vesting of title in the housing authority; and the court shall order the authority to deposit the amount of such deficiency in court. (Emphasis supplied.)

This portion of T.C.A. sec. 23-1510 clearly contemplates that interest shall be allowed to the property owner on any deficiency determined by a jury of view. It does not specify, however, that the owner has the right to withdraw the funds initially deposited in court. Indeed, the statute is obscure on this point, because the immediately succeeding provision thereof is as follows:

The money deposited into court by an authority *shall be secured in such manner as may be directed by the court and shall be disbursed by the court to the persons found to be entitled thereto by the final award of judgment of the court;* such disbursement shall be made by the court in the same manner as the payment of awards

in eminent domain proceedings. In case the amount deposited in court by the authority as the estimated compensation for the property shall exceed the amount of the final award or judgment, such excess shall be returned to the authority. (Emphasis supplied.)

The last sentence seems to contemplate that the funds deposited by the Housing Authority will be retained in court until a final determination of the ownership of the condemned property, and until a final determination of the "ultimate amount of compensation."

The construction of these sections of the Code was before the Court in the case of *Nashville Housing Authority v. Doyle,* supra. In that case the Court unanimously determined that the Housing Authority must pay interest on the entire amount of the award ultimately made to the owners, including the amount deposited in court by the housing authority pursuant to a declaration of taking. The Court stated that the statute was not explicit as to whether or not interest should be allowed upon the amount deposited. Apparently, however, it construed the provisions requiring the deposit to be secured in such manner as directed by the court, with disbursement as determined "by the final award of judgment of the court" to require that the deposit be held in court until the final determination. The Court accordingly required interest to be paid by the housing authority, not only upon any deficiency which might be determined by a jury of view, but upon the entire amount ultimately paid to the owners, including the amount deposited.

Indeed, in the *Doyle* case, the Court indicated doubt as to the constitutionality of the 1937 Public Act, if interest

were not allowed upon the entire award, including the deposit, since the Court construed the Act as requiring the deposit to be held in court rather than being subject to prompt withdrawal by the property owner.

The eminent domain statutes of Tennessee have been enacted piecemeal, and they have been amended from time to time by the Legislature. Each statute must be closely studied in order to determine the legislative purpose. By Chapter 298 of the Public Acts of 1957, there were enacted additional provisions concerning eminent domain, which are now carried as T.C.A. sec. 23-1526 and sec. 23-1527. These sections expressly provide that when the State of Tennessee, its counties, or municipalities, institute a condemnation proceeding in any court under the provisions of Chapter 14 or 15 of Title 23, such condemner may deposit with the clerk of such court at the time of filing the petition such amount as it shall determine the owner is entitled to receive and these statutes expressly provide

* * * that the owner may, if he so desires, make written request to said clerk to pay to him, without prejudice to any of his rights, said sum so deposited with the clerk, and the clerk shall pay to said owner the sum so deposited, provided the owner agrees to refund the difference between said sum and the final award in the case if the final award be less than the sum so paid into court or that a judgment may be entered against him in said case for the difference.

These statutes further provide that the withdrawal of the funds by the property owner shall in no way fix the amount to be allowed under subsequent proceedings in the case. They further expressly provide "that no in-

terest shall be allowed on the amount deposited with said clerk.''

These statutes are clear that there is no interest to be allowed on the amount deposited by the condemning authority. They further expressly provide, however, that they shall *"not apply to any housing authority, association, or administration."* T.C.A. sec. 23-1527 (Emphasis supplied).

As stated, these provisions were enacted in the Public Acts of 1957, some two years after the decision by this Court in the case of *Nashville Housing Authority v. Doyle,* supra, and it seems apparent that the Legislature did not intend to disturb the decision in that case, since it expressly excepted housing authorities from the provisions of the 1957 statute.

Thereafter, there was enacted Chapter 216 of the Public Acts of 1959, dealing with the acquisition of rights-of-way by the State, its counties and municipalities. This statute is codified as T.C.A. sec. 23-1528 through sec. 23-1541. As stated, these sections, as first enacted, dealt with the acquisition of rights-of-way, land, material, easements, and rights as deemed necessary for construction, re-construction, maintenance, repair, drainage, or protection of any street, road, highway, freeway, or parkway. It is clear that the provisions of the 1959 statutes, as originally enacted, were not applicable to housing authorities. These statutes contain provisions similar to those contained in the 1957 Public Acts, and permit the payment into court of a deposit by the condemning authority in the estimated amount of the damages to which the property owner is entitled. They spell out in detail that the property owner may agree to

the deposit and withdraw the amount deposited in full settlement for the taking of his property, or he may except to the amount assessed by the condemning authority and have trial before a petit jury. In the latter event, the owner is permitted to withdraw, without prejudice, the deposit made by the condemning authority.

The 1959 condemnation statutes were held constitutional by this Court in the case of *Catlett v. State,* 207 Tenn. 1, 336 S.W.2d 8, 337 S.W.2d 462 (1960) (with the exception of certain provisions not here material). Inasmuch as these statutes clearly permit the withdrawal of the deposit by the landowner, without prejudice, it would seem that the constitutional problem referred to by this Court in the *Doyle* case, supra, was obviated by the Legislature as to proceedings under these new provisions, and the Court so indicated in its opinion in the *Catlett* case.

As stated, the 1959 statutes as originally drawn were not applicable to condemnations except for purposes of streets, roads and highways. In 1965, however, there was enacted an amendment to T.C.A. sec. 23-1528, which made all of the provisions of the 1959 Act, that is T.C.A. secs. 23-1529—1541,

> unless expressly stated to the contrary, and without incorporation or reference, to be a part of every section, or legislative act, present or future, which grants the power of condemnation to counties and municipalities for county and municipal purposes respectively, and the making of`compensation in the manner therein set forth shall also be so implied; provided, however, that either party upon filing a statement to that effect within five (5) days of the service or publi-

cation of the original petition, may elect to proceed under the provisions of sec. 23-1401 et seq. or sec. 23-1501 et seq. (Tennessee Public Acts, 1965, Chapter 153, Section 1; T.C.A. sec. 23-1528.)

It is the contention of the Nashville Housing Authority in the present case that even if the 1959 Act, as originally drawn, were not applicable to housing authorities, it is applicable to housing authorities now by reason of the 1965 amendment. The present proceedings were instituted in December, 1965, after the effective date of the latest legislation. The question is, therefore, presented as to whether or not the 1965 amendment, which is applicable to condemnations by counties and municipalities ''for county and municipal purposes respectively,'' includes housing authorities.

It was held by this Court in the case of *Knoxville Housing Authority v. City of Knoxville,* 174 Tenn. 76, 123 S.W.2d 1085 (1939), that property held by a municipal housing authority was deemed to be held by the municipality itself for purposes of being exempt from taxation. The Court there said:

We have seen that complainant Housing Authority holds its property for a public purpose. Is this holding of property a holding by the State, by a county, or by a city or town? We think the holding of the property involved is a holding by the City of Knoxville in the sense of our decisions.

Under the provisions of the Act of 1935, a Housing Authority thereby authorized is brought out by the city council of the particular city in which it is to be located after a public hearing. The mayor of the city

appoints the commissioners to act as an Authority and this commission constitutes the body corporate and politic. These commissioners may be removed for sufficient cause by the mayor; the city attorney is required to render legal services to the Housing Authority, and the city has other powers of supervision and control.

It follows that while the Housing Authority is incorporated, it is still a mere agency or instrumentality of the city. 174 Tenn. at 85, 123 S.W.2d at 1088.

The Court drew an analogy between the relationship of the State of Tennessee and the University of Tennessee, and referred to an earlier decision in which it was held that the State and the public must be considered as the owners of the property held by the University, and that the sovereign character of the State's ownership was not changed by the creation of the University corporation as a convenient means through which the State exercises its governmental function of education. *University of Tennessee v. People's Bank*, 157 Tenn. 87, 6 S.W.2d 328 (1928). In the *Knoxville Housing Authority* case, the Court then said:

We, therefore, conclude that the property involved is still to be regarded as city property, although as a matter of convenience the title rests in this subsidiary corporation.

The Housing Authority, although incorporated, being none the less an arm or agency of the City of Knoxville, both property held by the Authority and bonds issued by the Authority may be exempted from taxation by the Legislature, as were the property and

bonds of a school district. 174 Tenn. at 86, 123 S.W.2d at 1088.

It is, therefore, plausibly argued by the Housing Authority in the present case that the 1965 amendment to T.C.A. sec. 23-1528 made applicable the procedures contained in sec. 23-1529 through sec. 23-1541 to housing authorities, and permits them to pay into court the estimated damages of property owners and be free from interest on the amount deposited.

The difficulty with this contention is in the wording of the Code sections themselves. They plainly were intended to apply to municipal and county governments only, and not to any of their subsidiary agencies.

For example, T.C.A. sec. 23-1540 provides:

All judgments rendered shall be paid out of the general funds of the municipality, county or state, whichever may be the condemner, together with interest at the rate of six per cent (6%) on any excess of the amount awarded an owner over the amount deposited with the clerk.

This section would clearly not apply to housing authorities, and broad as the language of the 1965 amendment to sec. 23-1528 may be, we do not believe that it can be properly applied to a housing authority. In the last analysis, a housing authority is not a "county" or a "municipality." It does not have taxing power as such, and we cannot by implication construe general condemnation statutes for cities and counties to include housing authorities, especially where the Legislature has already once expressly excluded them from the general

statutes (T.C.A. sec. 23-1527), and has made separate provisions for them (T.C.A. secs. 23-1507—1510).

█ It is insisted by the Nashville Housing Authority in the present case that there is no reasonable basis for classification by the Legislature which would require a housing authority to pay interest on funds deposited by it pending final settlement of a condemnation case while the State and its subsidiaries are not required to pay interest on funds so deposited under the 1957, 1959 and 1965 statutes. It is for this reason that the Housing Authority asks the Court either to overturn its decision in the *Doyle* case or to hold unconstitutional the provisions of the recent statutes insofar as those statutes propose to exclude housing authorities from their operation.

After careful consideration of the contentions of the Housing Authority, we adhere to the holding of the Court in the case of *Nashville Housing Authority v. Doyle*, supra, for the reason that the 1937 Public Act, under which the Housing Authority was proceeding in the present case, simply did not permit the property owners to withdraw their funds from court pending final determination of the ultimate amount to be awarded. It is unfortunate that the language of the 1937 statute was not explicit in this regard as were the 1957 and 1959 enactments. Possibly the Legislature may have intended that property owners could be allowed to withdraw the deposit made by a housing authority, but it failed to make its intention clear, and this Court construed the 1937 Act otherwise in the *Doyle case*. Possibly, also, the Legislature in 1965 intended to give housing authorities the benefit of T.C.A. secs. 23-1529—1541, but it also failed to make this intent clear.

Certainly it would seem that if a property owner is not entitled to withdraw a deposit, he should be allowed interest thereon until the funds do become available to him. The Housing Authority under T.C.A. secs. 23-1507—1510 is authorized to take his property immediately under the declaration of taking, but if the owner does not have the corresponding right to prompt withdrawal of the funds deposited, then certainly he should have interest thereon.

We are unable to accept the contention of the Housing Authority that the order of December 21, 1965, in the present case, constituted a final adjudication as to the parties entitled to the deposit, so as to enable them to withdraw the funds. We have quoted from the provisions of this order above, and it is noted that the order expressly retains the matter in court pending further orders, and this order was in no sense a final determination of the ownership of the funds on deposit.

The Housing Authority insists that even if the foregoing were not a final order, nevertheless, upon its entry the owners of the property would be entitled to file with the court evidence of their ownership, and to apply for immediate withdrawal of the deposit. This, however, was not the interpretation given to the statutes in the *Doyle* case in 1955. Indeed, it was the decision of the Court that the property owners did not have the right to withdraw the deposit and it was for that reason that the Court required the payment of interest upon the entire deposit. In the course of its opinion in the *Doyle* case, the Court, commenting upon T.C.A. sec. 23-1507 et seq., said:

Under this Act if we should hold that The Housing Authority could take the property of the landowner *without the latter being paid immediately* this would offend Article 1, Section 21, of the Constitution of Tennessee, and would render the Act invalid. 197 Tenn at 558, 276 S.W.2d at 724. (Emphasis supplied.)

It was pointed out by the Court in the *Doyle* case that the 1937 Act was modeled upon Federal Housing Statutes, which had been upheld in the case of *United States v. Miller,* 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1942). The Court pointed out, however, that the federal statutes

\* \* \* *expressly provided that no interest should be paid on the cash deposit but under that statute the property owner was entitled to the immediate payment of this estimated value.*

*Our State statute above referred to has no such provisions.* 197 Tenn. at 557-558, 276 S.W.2d at 723. (Emphasis supplied.)

█ Since, under the provisions of T.C.A. secs. 23-1507—1510, as construed by this Court in the *Doyle* case, the landowners do not have a right of withdrawal of the deposit, it follows that the Housing Authority must pay interest upon the entire award, including the cash deposit. As stated earlier, this is perhaps due to unfortunate and unclear phrasing of the legislation itself, and we know of no reason why a proper amendment to the 1937 Act, allowing immediate withdrawal by the landowner of the deposit, would not eliminate the problems raised in the present case.

As earlier pointed out, it is insisted in the brief of the Housing Authority that it is entitled to proceed under

the 1957, 1959 and 1965 Acts as well as under the 1937 statute. This contention, however, is not well taken. The 1957 Act expressly excludes Housing Authorities from its operation, and the 1959 statutes, as amended, pertain only to acquisition of land by the State, or its city or county governments.

It is insisted by the Housing Authority that the exclusion of housing authorities from the operation of the 1957, 1959, and 1965 eminent domain statutes creates an unreasonable or arbitrary classification by the Legislature, in violation of Article 11, Section 8 of the Tennessee Constitution. The trial judge held otherwise, and we agree with his holding. It is argued by the Housing Authority that the requirement of the payment of interest by the Housing Authority

* * * gives an unfair advantage or privilege to persons whose property has been condemned by Housing Authorities as opposed to persons whose property has been condemned by the State, a County, or a Municipality, because the latter class would receive interest only on the deficiency rather than on the entire award. * * *

The obvious answer to this contention is that persons whose property is taken by a housing authority under the 1937 statutes do not have the right to immediate withdrawal of the funds deposited, as do those whose property is taken under the 1957 Act, or under the 1959 or 1965 statutes. If the persons whose property is taken by a housing authority could immediately withdraw the cash deposited, then we would agree with the Housing Authority that they should not be entitled to interest on

the amount of cash deposited, and a statute requiring interest on such a deposit under those circumstances would certainly be of doubtful validity.[1]

■ We now turn to the contentions of the property owners in the present case. It is their insistence that the trial judge was in error in limiting interest on the award to January 31, 1966,

* * * the date the Order confirming the report of the Jury of View could reasonably have been entered, the Jury of View having filed its report on January 26, 1966.

Apparently it was the thought of the trial judge that the report of the jury of view could have been confirmed at the earliest motion day in the circuit court following the filing of its report, and that interest should not be allowed to accumulate beyond that time. With this holding we must respectfully disagree. The time within which a party must appeal from the finding of a jury of view is not expressly stated in the general eminent domain

1. In individual cases it is possible that by consent of all parties and approval of the trial court, a property owner may be permitted to withdraw a deposit made by a housing authority prior to final determination of the case. In such instance, we doubt that the property owner should receive interest on the deposit; indeed, his application for withdrawal might be deemed a waiver thereof. All we hold here is that the property owner does not have a legal right to such withdrawal under the 1937 statute, T.C.A. secs. 23-1507-1510. Cf. *State ex rel. Moulton v. Burkhart*, 212 Tenn. 352, 370 S.W.2d 711 (1963), dealing with the 1959 statutes, under which by consent of the condemner it was held that a lessee might withdraw part of a deposit; although had the condemner not specified the lessee's interest and consented to the withdrawal, there would not have been a legal right to such withdrawal.

statutes, T.C.A. sec. 23-1418. It has been held by this Court that an appeal from a report of a jury of view is timely if filed within the first term after the report is received. *State ex rel. v. Oliver,* 167 Tenn. 154, 67 S.W.2d 146 (1934); *Baker v. Rose,* 165 Tenn. 543, 56 S.W.2d 732 (1933). In the *Oliver* case, the Court said:

Where no time is prescribed by statute for taking an appeal from the report of a jury of view, it must be taken within a reasonable time. Unreasonable delay might raise the inference that the landowner waived the right of appeal. 167 Tenn. at 159, 67 S.W.2d at 147.

In the present case there was no appeal by either party from the action of the jury of view. We know of nothing which imposes a five-day limitation upon either party to determine whether to accept a jury of view report, or whether to file exceptions to it, or to take an appeal. Under T.C.A. sec. 23-1417, either party may file exceptions to such a report, and for good cause shown the same may be set aside and a new writ of inquiry awarded. Cumulatively and alternatively, under T.C.A. sec. 23-1418, either party may appeal from a finding of a jury of view and have a trial before a petit jury. We do not think that five days is a sufficient period of time for either party to consider a report of a jury of view and decide whether to accept, except or appeal.

As stated, the record indicates that the Housing Authority did file two motions after the incoming of the report of the jury of view to have the same confirmed. These motions are not actually in the record; but whether they appeared in the record would be immaterial, because it is clear that the Housing Authority did not finally move to have the report of the jury of view confirmed

until shortly before the final degree of the court on March 31, 1966. It further appears that the Housing Authority had not paid the deficiency into court until February 26, 1966.

We are of the opinion that the property owners are entitled to interest through the date of the final decree of the trial court; that is, March 31, 1966. It appears from the record that the motion to confirm the report was heard on March 25, 1966, but final decree was not entered until six days later.

The judgment of the trial court is modified accordingly, and in all other respects is affirmed at the cost of the Nashville Housing Authority.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.