The **NASHVILLE HOUSING AUTHORITY**

v.

**Horace G. HILL, Jr., et al.**

Court of Appeals of Tennessee,
Middle Section.

July 28, 1972.

Affirmed by Supreme Court May 7, 1973.

Harry G. Nichol, Nashville, for The Nashville Housing Authority.

Barksdale, Whalley, Leaver, Gilbert & Frank, Nashville, for Horace G. Hill and Third National Bank.

Denney, Lackey, Chernau & Castleman, Nashville, for Southern Finishers, Inc.

## OPINION

SHRIVER, Judge.

### I—THE CASE

This is an appeal by all of the parties from a decree entered by Judge Joe C. Loser, Jr., in the Third Circuit Court of Davidson County on November 1, 1971 in a condemnation suit filed by the Nashville Housing Authority on July 16, 1969 seeking to condemn a factory site at Seventh Avenue, South, and Archer Street in Nashville, Tennessee.

The case was heard on oral and documentary evidence, without the intervention of a jury, and after the case had been taken under advisement and briefs and arguments filed by all of the parties, the foregoing decree was entered holding (1) that the fair market value of the land, together with fixtures and improvements thereon, as of the date of taking was $83,450.00; (2) that the fair market value of the leasehold interest of Southern Finishers, Inc., was $50,000.00; (3) that Southern Finishers, Inc. was not entitled to moving expenses under state law; (4) that the fair market value of the land and buildings, exclusive of trade fixtures, was $33,450.00 which represented the interest of Horace G. Hill, Jr. and Third National Bank, Co-Trustees; and (5) that Horace G.

Hill, Jr., and Third National Bank, Co-Trustees, and Southern Finishers, Inc. have and recover from the Nashville Housing Authority the sum of $83,450.00 to be apportioned between them, allowing the Co-Trustees a recovery of $33,450.00 and Southern Finishers, Inc. a recovery of $50,000.00.

As hereinabove indicated, all of the parties to said decree duly perfected their appeals to this Court and filed assignments of error.

### II—THE PLEADINGS

The petition of the Nashville Housing Authority seeking to condemn the property in question recites that the plaintiff is a public body with the power of eminent domain, that it is engaged in the development of a project known as Edgehill Urban Renewal Project in Nashville and that it is necessary to acquire ownership in fee of the property described in the petition; that petitioner has been unable to agree with defendants as to compensation to be paid for the property, and that said defendants own or have a claim to an interest in the said property as set forth in the petition, that is, Horace G. Hill, Jr. and Third National Bank, Co-Trustees, own the fee while Southern Finishers, Inc., occupied said tract under an unrecorded lease, the terms of which were unknown to the petitioner, and that said lessee had on said tract certain fixtures and equipment which are movable and may, therefore, be entitled to damages for moving expenses; and that said lessee is made a party-defendant in order that it may set up its claims, if any, to damages for the taking of said land.

The prayers of the bill are for process and for all necessary and proper proceedings for the condemnation and appropriation of the fee in the described property, and for general relief.

There was a Declaration of Taking, accompanied by a deposit of $62,890.00 for

the use of the defendants or such persons as might be entitled thereto.

In their answer the defendants Horace G. Hill, Jr. and Third National Bank, Co-Trustees, while admitting the statistical data set forth in the petition, deny that the defendant Southern Finishers, Inc., had any lease on said property but, to the contrary, it is averred that the former lease held by Southern Finishers, Inc. expired on July 1, 1963 and had never been renewed. A letter from L. S. Williams, Real Estate Officer of the defendant Third National Bank, addressed to Southern Finishers, Inc., dated May 9, 1969, confirms the facts alleged with regard to the expiration of the lease and is attached as Exhibit "A" to the answer. The said answer also admits that $62,890.00 is a fair and just compensation for the property described in the petition.

The answer of defendant Southern Finishers, Inc. admits all of the allegations contained in Sections I and II of the petition and avers that it then occupied the property sought to be condemned under a lease agreement with the other defendants, pursuant to the terms of which agreement it had the right to remove all trade fixtures from the property at the conclusion of the lease; it neither admits nor denies that the amount paid into Court by the Housing Authority is fair and just compensation and asks that a Jury of View assess the defendant's damages.

An order sustaining the condemnation petition and granting a motion for a writ of inquiry as to damages and appointing a Jury of View was entered on October 23, 1969.

The Jury of View reported that the fair market value of the land and improvements was $62,500.00, the leasehold interest $29,500.00, and moving expenses $14,100.00, and that the compensation should be divided as follows:

| | |
|---|---|
| To the Trustees | $33,000.00 |
| To Southern Finishers, Inc., for its leasehold interest | 29,500.00 |
| To Southern Finishers, Inc., for moving expenses | 14,100.00 |
| For a total award to defendants of | $76,600.00 |

Exceptions to the report were filed by the Co-Trustees.

A motion accompanied by an affidavit was filed by the Co-Trustees to have the fund which was paid into Court turned over to them. Subsequently, a decree confirming the report of the Jury of View was entered, to which action the Co-Trustees duly excepted and the motion of the Co-Trustees to withdraw the fund of $62,890.00 paid into Court was denied.

Thereafter, the defendants Horace G. Hill, Jr. and Third National Bank, Co-Trustees, appealed from the finding of the Jury of View and demanded a jury to try the cause.

After hearing the case and taking same under advisement, the Trial Judge, on October 13, 1971, filed his Memorandum Opinion, which is as follows:

"MEMORANDUM

This is a condemnation proceeding wherein the Nashville Housing Authority has taken for public use a certain tract of land, including all fixtures and improvements thereon. The property is owned by the defendants, Horace G. Hill, Jr. and Third National Bank, Co-Trustees. On the date of taking the property was occupied by the defendant Southern Finishers, Inc., who was holding over under the terms of an expired lease, on a month-to-month basis. It is a total taking.

The expired lease included the following provision:

'. . . the Lessee will have the right to remove the trade fixtures placed on the premises by the Lessee

at the termination of the lease, provided however, that the Lessee will restore the premises and repair any damage caused by the removal of such trade fixtures . . ." (Exhibit 19)

For determination by the Court without a jury, is the issue of just compensation.

Three experts testified as to the value of the land and buildings, exclusive of fixtures, and their opinions range from $29,900.00 to $33,450.00. None of these witnesses claim an expertise in the evaluation of fixtures, nor were they able to express with reasonable certainty, the amount by which the tenant's fixtures enhanced the market value of the freehold.

One expert and the owner of Southern Finishers, Inc. testified as to the value of the fixtures in place for continued use. (Replacement cost less depreciation). The range of their testimony is from $38,131.00 to $75,944.00. This evidence was admitted and considered by the Court for the purpose of determining the extent to which the market value of the land has been enhanced by the existence of the fixtures. (See United States v. 0.84 Acres of Land [D.C.], 112 F.Supp. 828). While these are items of personalty as between landlord and tenant, the condemnor has taken them and cannot now deny that they are a part of the realty.

From consideration of the above, as well as the pleadings, arguments and the entire record, the Court has reached the following conclusions:

1. The fair market value of the land, together with fixtures and improvements thereon, as of the date of taking is $83,450.00.

2. The fair market value of the leasehold interest of Southern Finishers, Inc. is $50,000.00. This defendant is not entitled to moving expenses under state law and those expenses have not been considered in evaluating the leasehold interest.

3. The fair market value of the land and buildings, exclusive of fixtures, is $33,450.00, and represents the interest of Horace G. Hill, Jr. and Third National Bank, Co-Trustees.

The petitioner is liable for interest on the difference between $83,450.00 and $62,890.00 from the date of taking until the date of the second deposit, and on the difference between $83,450.00 and the amount of the second deposit, from that date until entry of judgment, and such interest will be prorated between the defendants.

The Nashville Housing Authority will be credited with any earnings on the two deposits pursuant to earlier orders.

Costs will be paid by the petitioner.

Counsel for the petitioner will prepare the order.

/s/ Joe C. Loser, Jr.
JUDGE"

The foregoing Opinion was implemented be a decree entered November 1, 1971, from which, as hereinabove stated, all of the parties appealed.

## ASSIGNMENTS OF ERROR

The assignments filed by Horace G. Hill, Jr. and Third National Bank, Co-Trustees, are to the effect that:

(1) The Court erred in finding that the fair market value of the leasehold interest of Southern Finishers, Inc. was $50,000.00, and deducting same from the amount awarded to the Co-Trustees; and,

(2) The Court erred in failing and refusing to award interest on the money initially tendered into Court from the date of taking to the date of judgment, less credit for any interest earned by the sum while on deposit.

The assignments filed by Southern Finishers, Inc. are:

(1) That the Court erred in finding that the fair market value of the leasehold interest of Southern Finishers, Inc. is $50,000.00, as the preponderance of the evidence indicates that said award was inadequate; and,

(2) That the Court erred in finding that Southern Finishers, Inc. was not entitled to moving expenses under state law.

The Nashville Housing Authority filed six assignments of error which may be summarized as follows:

(1) That there is no evidence to sustain the holding of the Trial Judge that the fair market value of the land, together with the fixtures and improvements, as of the date of taking (October 23, 1969) was $83,450.-00.

(2) That it was error to hold that Southern Finishers, Inc. had a leasehold interest in the property and were, therefore, entitled to leasehold damages.

(3) That there is no evidence to sustain the holding that the fair market value of the leasehold interest was $50,000.00.

(4) That a preponderance of the evidence does not sustain the holding that the fair market value of the land and buildings, exclusive of the trade fixtures, was $33,450.00.

(5) That having found that the items listed on Exhibit 3 were personalty as between landlord and tenant, it was error to award $50,000.00 damages for such personalty.

(6) That it was error for the Court to fail to award only $29,900.00 to the Co-Trustees, said amount being that shown by the evidence.

## THE FACTS AND OUR CONCLUSIONS

We will first discuss the assignment that the Court erred in finding that the fair market value of the leasehold interest of Southern Finishers, Inc. was $50,000.00 which is Assignment No. (1) on behalf of the Co-Trustees and Assignments Nos. (2) and (3) on behalf of the Nashville Housing Authority. In addition, it involves Assignment No. (1) on behalf of Southern Finishers, Inc.

The record shows that Southern Finishers, Inc. was occupying the premises in question under an unrecorded lease, the status of which was explained in a letter (Exhibit 2 to the testimony of W. Allen Bryan, Jr.), and shown to have been written by L. S. Williams, Real Estate Officer of defendant Third National Bank, Trustee. Said letter is as follows:

"May 9, 1969
Southern Finishers, Inc.
934 Seventh Avenue, South
Nashville, Tennessee

Re: 934 Seventh Avenue, South

Gentlemen:

In reply to your request, this is to advise that, at the time required under the lease on the above mentioned property for you to exercise in writing the privilege of extending it for a six-year period by written notice on or before July 1, 1963, both you and we had become aware of the public information to the effect that this property, along with other property in the area, would eventually be condemned by the Nashville Housing Authority, or some other Federal Agency, for interstate highway purposes.

Consequently, we agreed with you to allow you to continue to occupy the property until notice of condemnation was received by us, even though you had not and never did exercise the privilege of renewal provided for in the lease.

Yours very truly,

LSW:ef          L. S. Williams
                Real Estate Officer
bcc: Mr. John Barksdale"

It is strenuously insisted by counsel for the Co-Trustees that, at the time of taking, Southern Finishers, Inc. had no lease on the property and were tenants by sufferance only and, therefore, could not successfully claim damages by reason of a leasehold interest and, further, because a large part of the equipment in the building was so attached to the realty that it was part thereof and, under the proof, was unmovable, or "irremovable", as it is described in the record, and that such equipment as was irremovable was abandoned by the lessee. Furthermore, according to lessee's own evidence, the cost of moving much of the equipment that was movable exceeded the value thereof. It is, therefore, insisted that the $50,000.00 awarded the lessee was, in fact, part of the value of the fee and should have been awarded the owners, Third National Bank and Horace G. Hill, Jr., Co-Trustees.

It is conceded that Southern Finishers, Inc. occupied the premises in question for a number of years under a written lease which provided, among other things, that the lessee would have the privilege of dismantling and removing the machinery and trade fixtures used by it in the lessor's building. It also appears that the lessee did not give written notice of its intention or desire to extend the written lease for an additional six year period prior to the expiration thereof, nevertheless, said lessee did continue to occupy the building and to pay rent up until the time of taking, and it is presumed that the continued occupancy of the lessee was under the same terms and conditions as those recited in the written lease, except as to the term of the lease.

In fact, the language of the above quoted letter (Exhibit 2) confirms the fact that there was an agreement that the lessee might continue its occupancy of the premises until the notice of condemnation.

As to the value of the leasehold interest, W. Allen Bryan, Jr., expert witness for the Co-Trustees, testified as follows: (B.E. 66)

"Q. Now, in your opinion, what would have been the fair market value of the alleged leasehold rights of Southern Finishers in this subject property immediately prior to the date of taking?

A. The value of—

Q. Yes, sir, what could they have sold their rights of occupancy for before the date of taking, in your opinion, what would it have been worth?

A. They could not have sold it for anything."

There is other evidence in the record to the effect that, since the leasehold interest continued, as expressed in the letter of L. S. Williams to Southern Finishers, Inc. (Exhibit 2, Bryan), only until the notice of condemnation was received by the owners, it was of no substantial value on the date of taking.

It is to be observed that Southern Finishers, Inc. introduced no proof whatever as to the value of their "right of occupancy." In other words, they claimed no value for any unexpired lease but only asked for a value in place for a continued use of the abandoned trade fixtures. It would seem that the significance of the failure to renew their lease for an unexpired time lies in the fact that at the time of taking by condemnation they were not in position to claim damages for the loss of their lease.

In Gallatin Housing Authority v. Chambers, 50 Tenn.App. 441, 362 S.W.2d 270, it was held that the test of the value of a lessee's right in condemned property is the market value of his leasehold interest less the rents he must pay his landlord, the right to remain in undisturbed possession until the end of the term, and the excess of the sum for which such right will sell over the amount he has agreed to pay for it by way of rental.

While it was said in Housing Authority v. Chambers, supra, that a leasehold estate

is property for which compensation must be paid when it is appropriated under the law of eminent domain, an award to the lessee must be based upon the proposition that the taking by condemnation destroyed or impaired the value of the leasehold.

For the above reasons, Assignment No. (1) of the Co-Trustees and Assignments (2) and (3) of the Housing Authority are sustained.

The foregoing action will likewise operate to sustain Assignment No. (1) of Southern Finishers, Inc., but not for the reason stated in said assignment.

Assignment No. (2) on behalf of Horace G. Hill, Jr. and Third National Bank, Co-Trustees, is that the Court erred in failing and refusing to award interest on the money initially tendered into Court from the date of taking to the date of judgment, less credit for any interest earned on the sum while on deposit.

Counsel for Co-Trustees in their brief and argument point out that no attempt was made in the petition of the Housing Authority to specify or apportion the interests in the property as between the owners of the fee and the occupants. The Nashville Housing Authority tendered $62,890.-00 into Court as of the date of taking, October 23, 1969, but made no attempt to allocate or apportion that amount between the defendants. As a result, the owners of the fee were never allowed to withdraw any money from the date the property was taken to the final order, November 1, 1971.

While the Trial Judge awarded interest on the increased award above the amount initially tendered and ordered the funds, including the initial tender, placed in an interest producing account, nevertheless, the Court refused to award interest on the amount initially tendered from the date of taking to the final decree and it is insisted that interest on said amount should be allowed, less any income the fund produced while on deposit.

It is plausibly argued that, so far as the fee owners are concerned, it was exactly as if the condemning authority had not made any tender or deposit of funds when they filed their petition to condemn.

It is argued on behalf of the Housing Authority that since the adoption of Chapter 614, Section 1, Acts of 1968, amending Code Section 23–1510 permitting withdrawal of funds in Housing Authority cases, no interest is allowable on the amount deposited with the Clerk.

Section 23–1510, as amended by the 1968 Acts, provides that in the event the Housing Authority files a declaration of taking and pays into Court an amount estimated to be fair compensation for the property, the owner shall have the right to make a written request to the Clerk of the Court where the funds have been deposited to pay said owner, without prejudice, the sum so deposited "and the Clerk shall pay to the said owner the sum so deposited. . . Any further or additional sum that may be finally awarded . . . shall bear interest from the date of taking . . . provided, however, that no interest shall be allowed on the amount deposited with said Clerk."

It was pointed out in Baker v. Nashville Housing Authority, 219 Tenn. 201, 408 S. W.2d 651, that under the provisions of the statute as it then existed (1965, prior to the 1968 amendment), landowners did not have the right of withdrawal of the deposit made with the Clerk pending final determination of compensation to be awarded, hence, the Housing Authority, as condemnor, was required to pay interest on the entire award, including the cash deposit.

We are impressed that the meaning and purpose of the statute, as amended was to deny the owner interest on the money deposited with the Clerk by the condemnor because of the provision in said statute that, "The Clerk shall pay to said owner the sum so deposited, provided the owner agrees to refund the difference between said sum and the final award."

Because of the circumstances involved in the case at bar, the Court refused to permit the Clerk to pay the deposit over to the owners and, thus, denied them the very rights that the statute accorded them and upon which the no interest payment was predicated. Therefore, we are in agreement with counsel for the Co-Trustees that they, as owners, were entitled to an award of interest on the amount initially tendered from the date of taking, October 23, 1969, to the final decree, November 1, 1971, less any interest earned on said amount while on deposit. It results that Assignment No. (2) of the Co-Trustees is sustained.

We now come to a consideration of Assignment No. (1) filed on behalf of the Nashville Housing Authority to the effect that there is no evidence to sustain the judgment of the Trial Court fixing the fair market value of the land, together with fixtures and improvements, at $83,450.00, comprised of $33,450.00 as the value of the land and $50,000.00 for the leasehold interest, including the value of fixtures and equipment in place.

The Nashville Housing Authority employed two real estate appraisers to appraise the value of the land and buildings, to-wit: F. H. Treadway, Jr., and William R. Manier, III. Then they employed S. M. Dix & Associates of Grand Rapids, Michigan, to appraise the equipment in the buildings for their value in place for continued operation. Mr. J. C. Berry, an engineer, represented S. M. Dix & Associates and gave his testimony.

Mr. Berry explained the meaning of the word, "irremovable" as being things which are attached to the realty, either by intent or physically attached, and also things which, even though they might be capable of being relocated, are subject to damage by relocation, and which a prudent man would not relocate because of the cost involved.

It was pointed out that the equipment termed "irremovable" is significant in this litigation (1) if a part of the realty, to the extent it enhances the value of the land and the building; (2) the value such irremovables have for continued use in the operation of a going business; and (3) what salvage value they have.

Mr. Berry testified as to a long list of items which could be moved physically but stated that it was not feasible economically to do so because of several factors, including the fact that they would not fit into the new location and the expense of moving said items. He also gave a long list of items of equipment with his estimated value of these items, for continued use in place, which amounted to a total of $38,088.00.

In considering the question, whether the personalty which appears to have been abandoned and left on the premises with no intention of moving the same enhanced the value of the land and buildings, it is noted that Mr. Bryan, appraiser for the owners, stated that he was not in the machinery and equipment evaluation business and that he arrived at the figure of $38,100.00 by adopting the in place value arrived at by S. M. Dix & Associates. On cross-examination, he testified:

"Q. In other words, the cost of removal of this, what was left in and abandoned by the Company, would be greater than the salvage value?

A. That's right."

Mr. F. H. Treadway, Jr., appraiser for Nashville Housing Authority, stated that, in his opinion, the bulk of the equipment is in the category of value in use, it being property or equipment designed to fit specific requirements of a specific user and of very little or no value to anybody else and that it is the type of property for which there is virtually no market and, in fact, "The market for this type stuff is nonexistent."

He further stated:

"In viewing the subject building with this equipment in it, it is my opinion that

the owner or a prospective purchaser would be extremely foolish to, or would not, keep the premises vacant for a typical user, warehouse or some other purpose, in the hope they could get somebody that could utilize this special purpose equipment. It would be a money losing proposition, and in my opinion, considered as a whole, this equipment adds nothing and could possibly even be, detrimental to the value of the building itself. You would have to get it out of there before you could use it for any other purpose."

He further testified that, in his opinion, the equipment as a whole, added nothing to the value of the land and building.

Mr. William R. Manier, III, appraiser for the Nashville Housing Authority, testified as follows:

"Q. In other words, in your opinion, the fact that these things have been left there by the tenant, have they enhanced the value that you have given which is $33,500.00, this value of that building?

A. No, they haven't, in my opinion."

The testimony of Mr. Minos Fletcher, principal owner of the defendant Southern Finishers, Inc., is significant. He testified that much of the equipment was in the nature of personalty not attached to the realty. For example, he stated that the plating tanks were not attached to the realty, that they were just sitting on either brick or Breeko blocks; that the process wiring was not attached to the realty; that the monorail rack was simply bolted to supports and was, therefore, not attached to the realty. He then stated:

"My opinion is that all the items on this list are our personal property, and installed by us, bought by us, had no connection with the Third National Bank or the H. G. Hill estate.

Q. . . . In other words, everything on this list termed 'irremovables' are capable of, in fact, being moved?

A. That's correct."

The burden of Mr. Fletcher's further testimony seems to be that the cost of removal of the fixtures and equipment was greater than the value. For instance, he stated:

" . . . I am saying that the cost to remove and reinstall, which goes the whole gauntlet, disconnect, pack, move, unload, reconnect, set in place, that it would cost more to move these irremovables than value in place.

Q. In other words, your final statement as to the cost of removing this property and reinstalling it is greater than the value in place?

A. That's correct."

The Court then questioned Mr. Fletcher with respect to values of items of equipment such as rectifiers and plating tanks, and brought out the fact that they were not moved because they would not fit into the new building and equipment of Southern Finishers. At another point, Mr. Fletcher testified:

"Q. In other words, then, during the lapse of nineteen years the layout of the old plant was considerably obsolete as compared to the new modern plant you have?

A. That's correct."

There was proof, particularly of Mr. J. C. Berry representing S. M. Dix & Associates, to the effect that a large number of items set forth in his report were movable but he stated that it was not feasible economically to move them.

It appears beyond question that Southern Finishers, Inc. deliberately chose to leave a large part of the equipment and fixtures that were in the building and made no at-

tempt to move many of those that Mr. Fletcher said were not attached to the realty. And, while there is some evidence as to which of the fixtures were movable and which were "irremovable", such evidence is very unsatisfactory when applied to the question whether or not these fixtures became or were a part of the building so as to be regarded as realty and, to what extent, if any, they added to the value of the real estate.

In any event, we are convinced that the figure of $50,000.00 as the value of this equipment is completely unrealistic as it applies to the question for determination here and it is unclear from the Opinion and Decree of the Trial Judge as to how much value he placed on this property and equipment and how much value he placed on the leasehold, as such. Also, it is not clear how he applied same as the amount which it enhanced the value of the real estate, if in any amount, or whether he placed the entire value on the theory that the lessee was entitled to recover for the in place value of this machinery and equipment for supposed future use.

■ It would seem that, the extent to which the machinery and equipment was so attached to the real estate as to become a part thereof because of its physical connection with the real estate or because of the intention of the parties, its value would become recoverable by the owners and not the lessee.

Because of the uncertainty and confusion as to the above questions, it is necessary to sustain the assignments of the owner directed to this question and remand for further proof and a determination of these questions.

■ A tenant whose premises are condemned cannot place the burden of care or custody of his personalty on the condemnor, and, if he abandons it, is entitled to no compensation therefor. 29A C.J.S. Eminent Domain § 165, Injuries to Lessee.

■ The owner of condemned realty is not entitled to an award for the value of trade fixtures left on the premises by his tenant where they do not increase the value of the realty. 29A C.J.S. Eminent Domain § 175(2), page 759.

■ A tenant is not entitled to recover for trade fixtures where he voluntarily leaves them on the premises. A tenant is not entitled to be compensated for trade fixtures which are a part of the realty even though he placed them thereon. 29A C.J.S. Eminent Domain § 175(2).

■ "If a fixture, whether installed by the fee owner or a tenant, is integrated into the building proper and is a functional element of the operation of the building, it is compensable, but only to the extent that its existence has an enhancing effect upon the market or rental value of the premises." Nichols on Eminent Domain, Vol. 2, Sec. 5.83(1), 5.232.

Assignment No. (2) on behalf of Southern Finishers, Inc. is that the Court erred in finding that Southern Finishers, Inc. was not entitled to moving expenses under state law.

It is uncontroverted that the movable equipment was owned by Southern Finishers, Inc. and was not so attached to the realty as to become a part thereof. In fact, a list of movable equipment was furnished Southern Finishers by the Housing Authority (B.E. 126–127). Mr. Fletcher, principal owner of Southern Finishers, Inc., testified that the movables were moved by his Company at a total cost of $20,680.16 and that the reason for not seeking outside assistance was that Southern Finishers could find no one qualified to move said equipment. While the Housing Authority offered some testimony as to moving expenses, we think the preponderance of the evidence sustains Mr. Fletcher's testimony as to the reasonable cost of moving.

T.C.A. 23–1414 provides:

"Where the removal of furniture, household belongings, fixtures, equipment, machinery, or stock in trade is made necessary by the taking, the reasonable expense of such removal shall be considered in assessing incidental damages."

It also provides that the expense of removal shall include the cost of necesary disconnecting, dismantling or disassembling, loading and drayage to another location not more than ten miles distant, plus reassembling, reconnecting and installing in such location.

 It appears to be uncontroverted that Southern Finishers, Inc. moved at its own expense those items designated by the Housing Authority as movable. The Trial Judge in his final order indicated that those expenses were not considered in evaluating the leasehold interest but that "Southern Finishers is not entitled to moving expenses under state law." We think such holding was error and that Southern Finishers, Inc. is entitled to recover moving expenses. See Memphis Housing Authority v. Memphis Steam Laundry & Cleaners, Inc., 225 Tenn. 46, 463 S.W.2d 677.

We are not in agreement with the insistence of counsel for the Housing Authority that this defendant must seek recovery of moving expenses through Federal funds of HUD as a gift or gratuity of the Federal Housing and Urban Redevelopment. It results that said assignment is sustained and judgment rendered in favor of Southern Finishers, Inc. for $20,680.16 moving expenses.

It will not be necessary to consider in detail any remaining assignments since all of the questions raised have been substantially dealt with hereinabove.

It results that, for reasons above stated, the cause will be remanded to the Trial Court for such other and further proceedings as are necessary and proper in conformity with this Opinion.

Reversed and remanded.

PURYEAR and TODD, JJ., concur.