Nicholson, C!. J.,
delivered the opinion of the Court.
At the January Term, 1867, of the Chancery Court of Dyersburg, a decree was made in the case of E. G. Stallings, Adm’r v. John W. Price, by which the Clerk and Master was ordered to sell the steam saw and and grist mill, as well as the cotton gin and carding machine and their appurtances, which had belonged to the firm of Sadbury & Price. He reported to the August Term, 1867, that after advertising as directed, he sold the steam saw and grist mill, also the cotton gin and carding machine, on the 30th of March, 1867, when the same was struck off to Saunders & Aycock for $3,000, for which they executed their notes.
Before the report of sale was confirmed, Saunders & Aycock filed their petition to be relieved of their bid, and to have their notes cancelled and given up. They state in their petition, that shortly after their bids for the mills and machinery, the same were accidently consumed by fire. They state also, that the Court had no right to sell the property, because the allegations of the bill and proof showed no partnership in the property ordered to be sold, and because the property ordered to be sold was part of the real estate of J. W. Sadbury, deceased, and descended to his heirs, who were not made parties.
The answer to the petition admits the burning of the mills alleged, except that it is charged that the *69 burning was tbe result of tbe negligence and carelessness of petitioner • Saunders. They deny that all of tbe machinery was burnt, but say that parts of it are still there and injured comparatively but little. They state that immediately after executing their notes for the property, the petitioners took possession thereof, with the consent of the defendants and all concerned, and commenced running the mills; and that they were burnt while so in the possession of the petitioners. They insist that the Court had jurisdiction to order the sale, that the mills and machinery were partnership property, and that the property embraced in the decree was not a part of the real estate of J. W. Sadbury, but was erected by different persons for manufacturing purposes, and belonged at different times, in part, to several different persons or firms, and consequently were no fixtures.
Upon the hearing of the matters of the petition, the Chancellor declared the sale of the property null, and ordered the notes of petitioners to be cancelled. From this decree the defendants in the petition appealed to this Court.
It becomes necessary, at the threshold of our investigation of the questions arising in the case, to ascertain the true situation of the mill property and machinery prior to and at the death of J. W. Sadbury. The answer of Price, the partner of Sadbury at his death, gives the following statement on the subject. He says, that Sadbury and himself did enter into partnership about August, 1865, in the steam saw and grist mills, cotton gin and carding machine, mentioned in *70 the said bill, or rather, they entered into partnership in the mills then on the place, and the earnings of their joint business, have added the larger portion of said machinery to it since. He says, he put into the concern $700, and that the business since has been prosperous, and in addition to the new machinery added, the said firm has paid $1,700 of the purchase money for the land whereon the mills are situated, which land, it was intended, should belong to the firm, though contracted for by said Sadbury before. He says it was verbally agreed between Sadbury and himself, that the 300 acres of land, bought of Dodson, should be deeded to the firm of Sadbury & Price, and that they paid the $1,700 of the purchase money with that view; and the contract being void as to the land, he insists that Sadbury’s estate is liable to him for his proportion of the money so paid.
John H. Moss, who was appointed receiver, upon the filing of the original bill, proves that the buildings were substantial, and were all built by Sadbury, Aycock & Price, in 1865. The mill-house, constituting the grist, wool, gin, and lint cotton rooms, was a frame building set upon blocks, two stories high, 30 feet wide and 50 feet long.
The buildings were put upon the land claimed by by J. W. Sadbury — put there by J. W. Sadbury, in part, and part by John W. Price, and completed by Sadbury & Price. The machinery was put there for manufacturing purposes by Sadbury & Aycock as partners. The improvements were carried on by the late firm of Sadbury & Price as a firm.
*71 The buildings were not sold to Saunders & Aycock; they did not regard the buildings as in any way belonging to them. All of the machinery could have been removed from the house without injury, except the bolting ■ chest, and that could have been removed by taking it to pieces. The engine was what is called a portable engine, the boiler sitting under a separate shelter, or a shelter attached, upon a brick furnace with sheet-iron chimney.
From this evidence it appears, that when Sad-bury & Price formed their partnership, in August 1865, most of the improvements had already been made by Sadbury & Aycock, who had previously been partners in the mills. It was intended by Sadbury & Price, that the 300 acres of land, already contracted for by Sadbury, should be paid for with the earnings of the partnership, and thus should become partnership property. But this understanding seems not to have been carried out, although $1,700 of their joint earnings were used in paying for it. Price, in his answer, abandons any claim to the land under this parol agreement, and claims to be compensated, for his money used, out of Sadbury’s estate.
It appears that all the machinery added to the concern, after Price became a partner, was paid for out of the profits made by the mills. It could all be removed from the buildings without injury, and the propelling power was a portable steam-engine.
It appears that the partnership was understood by Price, one of the partners, to extend only to the machinery, and not to embrace either the buildings or *72 the land. This was also the understanding of the administrator and widow of .Sadbury, and of the purchasers, Saunders & Aycock. After purchasing, the buildings and the land were leased to Saunders & Ay-cock by the widow. Nothing but the machinery was sold by the Clerk and Master, and nothing else was claimed by the purchasers. Nor are we able to see, from all the proof, that the partnership property embraced anything else but the machinery. The building and the land belonged individually to Sadbury. The machinery belonged to Sadbury & Price as _ partners; and in ordering a sale for the settlement of the partnership affairs, nothing but the machinery could be legitimately sold. We see nothing showing that the machinery was so affixed to the freehold, as to attach to it the character of realty. On the contrary, it was put there for purposes of trade and manufacture, and not for the purpose of adding permanent value to the land, or of remaining permanently attached to the soil. The fact that Sadbury failed to have the deed made for the land to the firm, shows that it was not his intention that the real estate should become part of the partnership property. And we have seen that Price, the other partner, acquiesced in this purpose of Sadbury, and claims no interest in the real estate. We are, therefore, of opinion, that the heirs of Sad-bury were not necessary parties to the proceeding for the sale of the partnership interest in the machinery, the same being personalty and not realty. 2 Kent, 409; 1 American Repts., 372; 1 Wash. on Real Estate, 16; McDavid v. Woody (mss).
*73 The next ground on which petitioners seek relief is, that when the mills were burnt no title had been vested in the purchasers, and, therefore, that the loss should fall on the party having the legal title at the time. It has been frequently determined by this Court, that a purchaser at a Chancery sale acquires no title to the estate until report and confirmation of sale, and that he is not liable in the interim to any loss or injury that may happen to the estate; and may, on proper grounds, refuse to execute the purchase. Houston v. Aycock, 5 Sneed, 412. But. this rule is applicable only to Chancery sales of real estate. In the sales of personal property, under decrees of the Chancery Court, it has become the settled law of the State that the title to the property passes to the purchaser as soon as the contract is completed by his bid being accepted by the Master. In the case of Potter v. Conrad, Meigs, R., 22, Judge Turley held, that it is not the delivery or tender of the property, nor the payment or tender of the purchase-money, which constitutes a sale. The sale is good and complete so soon as both parties have agreed to the terms: that is, so soon as the vendee says, “I will pay the price demanded,” and the vendor says, “ I will receive it.” It being the contract of sale, then, which changes the right to the possession of the property, it necessarily follows, that the right to possession is changed from the moment the contract is made, and that any loss or injury to the property, after that. period of time, is the loss of the vendee, whether this loss be partial or general. This Cease has been followed as authori *74 tative ever since in all cases in which the legal title, as in the case before us, vested in the administrator upon the death of the intestate.
In the case before us, the purchasers voluntarily took possession of the mills, contracted for a lease of the real estate from the widow, and had been running the establishment several weeks when the fire occurred. The proof is that Saunders, one of the purchasers, who alone is insisting on being released, was notified and warned that there was danger in running the machinery without remedying certain defects which were pointed out to him; yet, that he disregarded the warnings, and continued to run the machinery until the fire occurred. The evidence tends strongly to show that the fire was the result of negligence and recklessness on his part. The facts of this case strongly support the wisdom of the rule which throws the loss on the vendee in such cases.
The decree of the Chancellor is reversed, and the cause remanded to be proceeded in as herein indicated. The costs of this Court will be paid by Saunders, and the court below as the Chancellor may direct.