MEMPHIS HOUSING AUTHORITY

*v.*

MEMPHIS STEAM LAUNDRY-CLEANERS, INC.

463 S.W.2d 677.

(*Jackson*, April Term, 1970.)

Opinion filed January 18, 1971.

Petition for Rehearing Denied March 1, 1971.

HUGH F. CAREY, JR., and MELVIN FLEISCHER, COCHRAN, CAREY, FLEISCHER & MULLIKIN, Memphis, for appellant.

J. ALAN HANOVER and JAMES B. JALENAK, HANOVER, WALSH, BARNES & JALENAK, Memphis, for appellee.

48

Mr. Justice McCanless delivered the opinion of the Court.

The Memphis Housing Authority instituted a proceeding under the authority of Chapter 8 of Title 13, T.C.A., to condemn a tract of land on which is situated a large commercial laundry in the City of Memphis. The land, improvements, and personal property located thereon are used in the conduct of what is referred to in the record as the largest commercial laundry in the south, and owned and operated by Memphis Steam Laundry-Cleaner, Inc.

The Circuit Judge by agreement heard the case without the intervention of a jury and pronounced a judgment of $2,394,205.86 in favor of the defendant and against the plaintiff, the housing authority, the judgment consisting of $970,000.00 for the land and buildings and $1,424,205.86 for moving costs which were included in the judgment as authorized by Sections 23-1414, 13-807 and 13-824, T.C.A. The housing authority perfected its appeal in the nature of a writ of error to the Court of Appeals which modified the judgment of the Circuit Court. In response to the laundry's petition we have granted certiorari.

The petitioner, the laundry, has filed the following assignments of error:

I. "The Court of Appeals erred in holding that some of Petitioner's equipment, machinery and fixtures, such as telephone and public address systems, process piping, boilers and related gauges, pumps and machinery, pumps and other equipment forming a part of process piping, oil and water storage tanks, electric generator and steam engine, water treatment machinery, well pumps and related machinery, excess ventilating equipment, and process wiring were not movable and, hence, a part of the 'real estate.'

"This ruling of the Court of Appeals, which reversed the final judgment of the Trial Court in this regard, is in direct conflict with the provisions of sec. 23-1414, T.C.A. and the findings of fact of the Trial Court which are supported by the overwhelming preponderance of the evidence.

"The Court of Appeals thus erred in sustaining Respondent's Assignments of Error One and Two raised below.

II. "The Court of Appeals erred in sustaining Respondent's Assignment of Error Four raised below and, more particularly, erred in ordering Petitioner to pay rent to Respondent without correspondingly ordering Respondent to pay interest to Petitioner."

The housing authority has filed assignments of error by which it insists that (1) the Court of Appeals erred in ruling that payment for moving expenses be made without any requirement that such expenses shall have actually been incurred as a prerequisite for such payment; (2) that the Court of Appeals erred in requiring the payment of the judgment before the delivery of possession to the housing authority; and (3) that it was error for the Circuit Court to admit certain evidence.

The Court of Appeals differed with the Circuit Court with regard to the treatment of items of equipment, particularly with regard to a large amount of process piping and process wiring, the Circuit Court holding that the removal cost should be assessed on the basis of all the laundry machinery and equipment which could be moved and which was functional as a part of the laundry operation, but excluding such items as were functional with respect to the building. The Court of Appeals was of opinion that certain of the items that the Circuit Court had adjudged as removable fixtures were not removable; these items were the process wiring and the process piping, oil and water storage tanks, and the other items listed in the laundry's first assignment of error, and the Court of Appeals disallowed the cost of removing and reinstalling such items.

Until 1951 there was no provision in the Tennessee Statutes for the cost of removal of personal property and fixtures in condemnation proceedings. (See: *Lenzi v. Memphis Union Station Co.*, 3 Tenn. CCA 218 [1913]). In 1951 the General Assembly by Chapter 176 of the Public Acts of that year amended what then was Section 3122 of the Code and which is now Section 23-1414, T.C.A., by adding the following sentence:

"Where the removal of furniture, houshold belongings, fixtures, equipment, machinery, or stock in trade is made necessary by the taking, the reasonable expense of such removal shall be considered in assessing incidental damages."

In 1957 the General Assembly by Chapter 398 of the Public Acts of that year added the third sentence of Section 23-1414:

"The reasonable expense of the removal of such chattels shall be construed as including the cost of: any necessary disconnection, dismantling or disassembling, the loading, and drayage to another location not more than ten (10) miles distant, and the reassembling, reconnecting, and installing in such new location."

Section 23-1402 makes all of Chapter 14 of Title 23 applicable to all eminent domain proceedings unless the contrary is expressly stated. Section 13-807, T.C.A., confers upon housing authorities the right to condemn property either under Title 23, Chapter 14 or under Title 23, Chapter 15, and the amendments to the Chapters, but by Chapters 191 and 192 of the Public Acts of 1965 removal provisions applicable to housing authorities were enacted. There is no substantial difference between the wording of these amendments, which are identical with each other, and the wording of the removal provision of Section 23-1414, T.C.A.

■ The Sections of Tennessee Code Annotated which authorize the acquisition of real property by housing authorities make no provision for the condemnation of personal property, therefore housing authorities cannot acquire personal property by the process of eminent domain. The moving expense provisions, above quoted, apply both to personal property and to fixtures. The reference to "such chattels" in the amendment to Section 23-1414, T.C.A., which the General Assembly enacted as Chapter 398, Public Acts of 1957, was not intended to restrict the payment of moving costs to personalty. As the Section now stands the word "fixtures" must be given its usual meaning, and the words "such chattels" be construed as referring to items of personalty. In

*Hickman v. Booth,* 131 Tenn. 32, 173 S.W. 438, Mr. Justice Green said:

"In Tennessee only those chattels are fixtures which are so attached to the freehold that, from the intention of the parties and the uses to which they are put, they are presumed to be permanently annexed, or a removal thereof would cause serious injury to the freehold. *Johnson v. Patterson,* 13 Lea [81 Tenn.], 626; *De Graffenreid v. Scruggs,* 4 Humph. [23 Tenn.], 451, 40 Am.Dec. 658; *Union Bank & Trust Co. v. [Fred W.] Wolfe,* 114 Tenn. 255, 86 S.W. 310, 108 Am.St.Rep. 903, 4 Am.Cas. 1070. The usual test is said to be the intention with which a chattel is connected with realty. If it is intended to be removable at the pleasure of the owner, it is not a fixture. *Johnson v. Patterson,* 13 Lea [81 Tenn.], 626; *Cannon v. Hare,* 1 Tenn.Ch., [22] 23."

Chancellor Cooper in *Cannon v. Hare,* 1 Tenn.Ch. 22, which he decided in 1872, said:

"Accordingly the tendency of modern decisions is to make the rights of the parties to fixtures and buildings depend not on the manner in which they are affixed to the free-hold, but upon the character of the parties, the intention in erecting the improvements, and the uses to which they are put."

■ The purpose of the General Assembly in providing for the payment of the costs of removal in eminent domain proceedings was to make the property owner whole, but in no case may the cost of disassembling, removal, and reassembling in the new location exceed the cost of buying and installing similar articles. It should be made affirmatively to appear that the property owner receives the full cost of removal or replacement,

but no more than the full cost of removal or replacement. Subject to this rule a property owner may remove and relocate any fixture that the condemner has not sought by his petition to condemn.

■ The housing authority in its first assignment of error contends that the payment of moving expenses should not be required until after they have been actually incurred. This overlooks the provision that moving expenses are incidental damages. Such damages are to be paid along with the judgment for the taking and cannot be deferred until the cost of removal has been incurred. This assignment of error is overruled.

In Nichols on Eminent Domain, Third Edition, sec. 14.2471[1], page 658, the following appears:

"Nevertheless, a recent decision" (*Jacksonville Expressway Authority v. Henry G. Du Pree Co.*, [Fla.] 108 So.[2d] 289) "emphasizes the fact that, although market value is a useful tool in determining just compensation, the just compensation which is constitutionally required is not synonymous with market value and that the owner must be made pecuniarily whole so far as possible and practicable. Conceding that in other jurisdictions the cost of moving personal property has no bearing on the fair market value, the court asserted that where an owner is constitutionally guaranteed full or just compensation, the theory and spirit of such a guarantee requires a practical attempt to make the owner whole. The court said that a person who is put to expense through no desire or fault of his own can only be made whole when his reasonable expenses are included in the compensation. This concept is a genuine departure from the long-accepted

market value doctrine. More importantly, however, it predicates some degree of damage upon the fact that the property is taken from the owner against his will. In other words, the sovereign must now pay something for the right to exercise an inherent, sovereign, prerogative power.''

██ The second assignment of error of the housing authority that the payment of the judgment should have been deferred until possession of the property likewise must be overruled. The removal of the fixtures, machinery and equipment of the laundry undoubtedly would require considerable time, and so long as the removal is in progress the property cannot be used as a laundry and the company should not be required to pay rent or other expenses because of its continued, though temporary, occupation of the premises for the purpose of removal of fixtures and personalty.

We remand the case to the Fifth Division of the Circuit Court of Shelby County for a determination of the damages both for the taking and the incidental damages in accordance with the foregoing opinion. The court will consider the record as now constituted and such other testimony as it may consider necessary. To this extent the judgments of the Circuit Court and Court of Appeals are modified.

The costs including the cost of the appeal will be adjudged by the Circuit Court. The funds paid into the registry of the court by the housing authority will be invested in marketable securities of the United States until such time as they are ordered to be paid to the property owner.

DYER, CHIEF JUSTICE, CHATTIN and CRESON, JUSTICES, and ADAMS, SPECIAL JUSTICE, concur.

### OPINION ON PETITION TO REHEAR

MR. JUSTICE McCANLESS.

Memphis Housing Authority has filed a petition to rehear by which its asks that we review our opinion. We have carefully considered the petition and overruled it for the reason that everything mentioned in the petition was considered when we prepared our opinion.

DYER, CHIEF JUSTICE, CHATTIN and CRESON, JUSTICES, and ADAMS, SPECIAL JUSTICE, concur.