913 S.W.2d 175 (1995)
STATE of Tennessee, on Relation of the COMMISSIONER, DEPARTMENT OF TRANSPORTATION, for and on Behalf of Said Department, Petitioner-Appellee,
v.
Leon J. TEASLEY and wife, Lois J. Teasley and Eagle Advertising, Inc., et al., Defendants-Appellants.
Court of Appeals of Tennessee.
July 14, 1995.
Application for Permission to Appeal Denied October 30, 1995.
*176 George W. Morton, Jr., Morton & Morton, Knoxville, for Eagle Advertising, Inc.
Charles W. Burson, Attorney General and Reporter, Nashville, and Mark C. Hartsoe and Cynthia R. Paduch, Assistant Attorneys General, Knoxville, for Appellee.
Application for Permission to Appeal Denied by the Supreme Court October 30, 1995.

OPINION
CLIFFORD E. SANDERS, Senior Judge.
The pivotal issues on this appeal are: (1) For the purpose of fixing compensation in condemnation cases, are outdoor advertising billboards, attached to the land, real or personal property? and (2) Did the billboard owner waive its right to collect "bonus value" under its lease from the proceeds of the award to the land owner? We affirm the holding of the trial court that the billboard was personal property and the owner waived its right to collect "bonus value" under its lease.
In November, 1990, the State of Tennessee, on Relation of the Commissioner, Department of Transportation, filed a petition for condemnation of a 1.15-acre tract of land located at the intersection of U.S. Highway I-40-75 and Cedar Bluff Road in Knox County. The Defendants, Leon J. Teasley and wife, Lois Teasley (the Teasleys), were the owners of the property. In February, 1988, the Teasleys had entered into a lease agreement *177 with Defendant-Appellant Eagle Advertising, Inc. (Eagle) permitting Eagle to erect and maintain an outdoor advertising billboard on the property. The initial term of the lease was for five years but it contained a renewal clause which gave Eagle the right to renew the lease from year-to-year. The rent was set at $3,000 per year. All parties to the lease were aware of the fact that the state would probably condemn the Teasley property for highway improvements sometime in the near future.
Before entering into a lease with Eagle, Mr. Teasley was adamant in making sure Eagle would not be entitled to any of his proceeds from such condemnation, and insisted the lease should so provide. For this reason, Mr. Desmond, one of the owners of Eagle, amended the lease by writing in the following provision: "If the state buys the property that the sign is on, Mr. Leon Teasley will have no liability with Eagle Outdoor Adv."
Eagle customarily paid in advance the annual $3,000 rent for the sign but, prior to paying the rent in 1990, Eagle had an agreement prepared for Mr. Teasley to sign, saying: "If Eagle loses the sign, Teasley will return the unused portion of the rent on a prorata basis."
In its condemnation petition, the state alleged Eagle had a lease on the property and made it a party to determine what interest, if any, it had in the property. It deposited $668,151 into court as the value of the property and an order of possession was entered for the property.
For answer, the Teasleys denied the funds deposited with the court were sufficient to compensate them for the value of their land. They further denied the lease to Eagle constituted an encumbrance on the property.
Defendant Eagle filed an answer in which it alleged it was entitled to relocation expenses of its billboard. It further alleged it was entitled to compensation for the value of its sign and the value of its leasehold which it averred was to be "separately computed" and "may not be part of an unapportioned judgment... ." Eagle also filed a cross claim against Teasleys, alleging the property was taken before the end of the lease term and seeking to recover $1,200 as the pro rata portion of the 1990-91 annual rent which had been prepaid to Mr. Teasley.
An order was entered in April, 1991, awarding Eagle relocation expenses of its billboard of $13,292, which was the agreed amount between Eagle and the state.
The Teasleys filed a motion to determine Eagle's remaining rights under the lease. Upon the hearing, the court found that under usual circumstances the lessee would be entitled to the "bonus value", if any, of the lease, and the total condemnation proceeds awarded for the value of the property would be apportioned accordingly between the lessor and lessee. But the court declined to apportion the condemnation award, finding Eagle, under the terms of the lease, had waived its right to collect any portion of the condemnation proceeds from the Teasleys. The court found the total award to Eagle was thus limited to the relocation expenses already received from the state. The Teasleys and the state settled the remaining issues, and judgment was entered accordingly.
Eagle has appealed, saying the court erred. We cannot agree, and affirm for reasons hereinafter stated.
Eagle contends the billboard is a fixture and should be considered a part of the real property for determining its compensation. The law, however, does not support this theory. The billboard is a trade fixture as opposed to a fixture. Black's Law Dictionary defines the term "fixture" as "[a]n article in the nature of personal property which has been so annexed to the realty that it is regarded part of the land." "Trade fixture", on the other hand, is defined as "[p]ersonal property used by the tenant in business. Such fixtures retain the character of personal property... ."
In the case of Memphis Housing Authority v. Memphis Steam Laundry-Cleaner, Inc., 225 Tenn. 46, 463 S.W.2d 677 (1971), our supreme court said, at 679:
In Tennessee only those chattels are fixtures which are so attached to the freehold that, from the intention of the parties and the uses to which they are put, they *178 are presumed to be permanently annexed, or a removal thereof would cause serious injury to the freehold. Johnson v. Patterson, 13 Lea [81 Tenn.], 626; De Graffenreid [Degraffenreid] v. Scruggs, 4 Humph, [23 Tenn.], 451, 40 Am.Dec. 658; Union Bank & Trust Co. v. [Fred W.] Wolfe, 114 Tenn. 255, 86 S.W. 310, 108 Am.St.Rep., 903, 4 [Am.] Ann.Cas. 1070. The usual test is said to be the intention with which a chattel is connected with realty. If it is intended to be removable at the pleasure of the owner, it is not a fixture. Johnson v. Patterson, 13 Lea [81 Tenn.] 626; Cannon v. Hare, 1 Tenn.Ch., [22] 23.
In the case at bar, the lease in question provided: "All structures, equipment and materials placed upon the premises by the Lessee shall not be deemed to be a fixture and shall always remain the personal property of, and may be removed by the Lessee at any time prior to or within a reasonable time after the expiration of the terms hereof or any extension thereof. If lessee should remove said structure from the property, only that portion of the supports and anchors below the grade surface will remain a part of the property." The record further shows that, as a result of the taking, the billboard and the pole on which it was mounted were removed from the Teasley property and placed in Eagle's possession at the state's expense. Also, Eagle listed the billboard on its tangible personal property reports with the Knox County tax assessor for 1989 through 1993.
Neither trade fixtures nor any other type of personal property are compensable in eminent domain. This court, in Nashville Housing Authority v. Hill, 497 S.W.2d 917 (Tenn. App. 1972), at 926, said: "A tenant is not entitled to be compensated for trade fixtures which are a part of the realty even though he placed them thereon." (Citing 29A C.J.S. Eminent Domain § 175(2). And in Memphis Housing Authority, supra, 463 S.W.2d 677, the court said, at 679: "The sections of Tennessee Code Annotated which authorize the acquisition of real property by housing authorities make no provision for the condemnation of personal property, therefore housing authorities cannot acquire personal property by the process of eminent domain." T.C.A. § 13-11-101, et seq. does, however, provide for the cost of removal of personal property, specifically billboards, in condemnation proceedings. T.C.A. § 13-11-105, as pertinent, provides: "Moving and related expenses.  (a) Whenever a program or project to be undertaken by a displacing agency will result in the displacement of any person, the head of the disciplinary agency shall provide for the payment to the displaced person of: (1) Actual reasonable expenses in moving such person, such person's family, business, farm operation, or other personal property." (Emphasis ours.) In the same chapter, the definition section, T.C.A. § 13-11-103, as pertinent, provides:
Definitions.  As used in this chapter, unless the context otherwise requires:
"(1) "Business" means any lawful activity, excepting a farm operation... ."
* * * * * *
"(D) Solely for the purposes of § 13-11-105, for assisting in the purchase, sale, resale, manufacture, processing, or marketing of products, commodities, personal property, or services by the erection and maintenance of an outdoor advertising display or displays, whether or not such display or displays are located on the premises on which any of the above activities are conducted; ... ."
* * * * * *
"(3) `Displaced person' means, except as provided in subdivision (2)(B):
(A) Any person who moves from real property, or moves such person's personal property from real property: ... ." (Emphasis ours.)
In addition to the moving expenses noted above, a tenant is entitled to be compensated for the "bonus value" of the lease. The trial court, in its order determining Eagle's rights under the lease, said: "[A]s a matter of law, Defendant ... would be limited in any event to recovery of the excess of the market value of its lease (if any) over the rents due under it for the remainder of the initial lease term (which amount is commonly *179 referred to as the `bonus value' of the lease), plus moving costs for personal property."
In the case of State ex rel. Dept. of Transportation, etc. v. Gee, 565 S.W.2d 498 (Tenn. App. 1977) this court defined "bonus value", at 502, as follows:
Apportionment between lessor and lessee is accomplished by determining the value of the latter's interest in the taken property, which in turn is calculated by determining the fair rental value of that property for the unexpired term of the lease and subtracting the rent that would actually have been paid for it by the lessee during that term. Shelby County v. Barden, 527 S.W.2d 124 (Tenn. 1975); Moulton v. George, supra [208 Tenn. 586, 348 S.W.2d 129 (1961)]; Mason v. City of Nashville, 155 Tenn. 256, 291 S.W. 1074 (1927); Gallatin Housing Authority v. Chambers, 50 Tenn. App. 441, 362 S.W.2d 270 (1962); State v. Texaco, Inc., supra [49 Tenn. App. 278, 354 S.W.2d 792 (1961)]; City of Nashville v. Mason, 11 Tenn. App. 344 (1930). In other words, the total fair market value of the taken property is apportioned by first determining the lessee's interest, which is the fair market value of the leasehold on that property minus rent actually called for under the lease, with the remainder of the property's fair market value going to the lessor.
In the case at bar, however, the court found Eagle waived its right to collect any part of the award to Teasley for the value of its leasehold under the following handwritten provision in the lease: "If the state buys the property that sign is on, Mr. Leon Teasley will have no liability with Eagle Outdoor Adv." Eagle, in its brief, argues the court misinterpreted the meaning of this provision. We cannot agree.
The record shows that at the time the lease was executed both parties to the document were aware the state had plans to rebuild the interchange and would probably condemn Teasleys' property. For that reason, Mr. Teasley testified, he specifically requested the lease contain a provision which would shield him from liability to Eagle for any portion of the proceeds payable to him by the state in the event of a taking.
The record shows the entire lease was drafted by Eagle and the provision quoted above was written into the lease by Mr. Desmond. At the trial, Mr. Desmond denied Mr. Teasley's testimony, saying the provision was meant to protect Mr. Teasley from suit for breach of the lease in the event the state took the property and he could no longer honor the lease. On cross-examination, Mr. Desmond testified as follows:
"Q. There is no question but that the discussion about who would get what as a result of condemnation, that conversation did occur between you, Mr. Teasley and Mr. Turner, didn't it?
"A. There was a conversation about potential condemnation.
"Q. And it was discussed at length, wasn't it?
"A. Well, we talked about it, yes.
"Q. And I believe you stated that you informed Mr. Teasley that Eagle had no interest in getting any money that was due Teasley?
"A. That is correct. If it was due Mr. Teasley, we had no interest in... ."
The trier of fact is the judge of the credibility of the witnesses and it is apparent from the final order that the trial judge accepted the testimony of Mr. Teasley. Also, the rule is well settled that "the contract, where ambiguous, will be construed most strongly against the party who drew it." Hanover Insurance Co. v. Haney, 221 Tenn. 148, 425 S.W.2d 590, 592 (1968).
"It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another." Cocke County Bd. v. Newport Utilities Bd., 690 S.W.2d 231, 237 (Tenn. 1985) (citing Associated Press v. WGNS, Incorporated, 48 Tenn. App. 407, 348 S.W.2d 507 (1961).
We concur in the finding of the trial court Eagle had waived any entitlement it may have had for the "bonus value" of its lease and an apportionment for such value.
*180 Eagle, in its brief, argues it is entitled to compensation for its billboard pursuant to 42 U.S.C. § 4652 of the U.R.A. (Uniform Relocation Act), which section has been adopted by our state legislature and is codified at § 29-16-114. The statute, as pertinent, provides:
(b) Notwithstanding any other provision of law, if any person, agency, or other entity acquires any interest in real property pursuant to the execution of the power of eminent domain, he shall acquire at least an equal interest in all buildings, structures, or other improvements located upon the real property so acquired and which he requires to be removed from such real property or which he determines will be adversely affected by the use to which such real property will be put.
(c)(1) For the purpose of determining the just compensation to be paid for any building, structure, or other improvement required to be acquired by subsection (b) of this section, such building, structure, or other improvement shall be deemed to be a part of the real property to be acquired notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the real property, to remove such building, structure, or improvement at the expiration of his term, and the fair market value which such building, structure, or improvement contributes to the fair market value of the real property to be acquired, or the fair market value of such building, structure, or improvement for removal from the real property, whichever is the greater, shall be paid to the tenant therefor.
Our research reveals this statute has not been previously construed by the courts in this jurisdiction. We think, however, it is properly interpreted as applying only to real property and not to trade fixtures or other personalty. This interpretation is consistent with the rule noted above, that personal property is not compensable in eminent domain.
This interpretation is further supported by the legislative history of 42 U.S.C. § 4652:
... there are situations where the buildings, structures, or improvements do not belong to the owner of the land, but are the property of a tenant or other person holding legal possession.
[The Act] provides in such instances, that for the purpose of determining the extent of the acquisition of real property and the valuation thereof, no building, structure, or other improvement shall be deemed to be other than a part of the real property solely because of the right or obligation of a tenant, as against the owner of any other interest in the real property, to remove such building, structure, or improvement at the expiration of his term... . (Emphasis ours.)
Thus, in our view, congressional intent in enacting the statute was to prohibit fixtures and certain other types of realty from being characterized as personal property solely because of the tenant's right to remove it from the land at the end of the lease term. We do not, however, believe congress intended the statute to require compensation for removing such property.
This interpretation of the statute also finds support in the case law of other jurisdictions. In Creative Displays, Inc. v. South Carolina Highway Department, 272 S.C. 68, 248 S.E.2d 916 (1978) the plaintiff sought compensation for an outdoor advertising sign located on real property over which the state's highway department had acquired a right-of-way. The plaintiff, in part, based its claim to compensation upon the provision in the uniform statute which is set out above. The highway department contended "the sign was personal property, was not a fixture, was not acquired and no compensation [was] due." Id. at 917. The South Carolina Supreme Court found the billboard was personal property and not compensable under the statute. The court, at 918-19, said:
One of the purposes of the Federal Act is to provide a uniform policy of real property acquisition practices in all cases involving the use of federal funds. But the Act cannot and does not change the South Carolina Constitution and statutory law. The ".. . buildings, structures, or other improvements located upon the real property so acquired ..." refers to buildings, structures and other improvements which *181 have become a part of the realty, and does not refer to personal property located thereon. "Fair market value" referred to in § (b)(1), is not affected by personal property which may be removed.
In order to participate in federal funds, the Highway Department gave assurance to the federal agency as follows:
"[I]n acquiring real property, it will be guided, to the greatest extent practicable under State law, by the provisions of 42 U.S.C.A. § 4652."
The obvious purpose of this agreement on the part of the Department is to assure the federal agency that its funds will not be spent under a more liberal policy than the state uses in acquiring other easements. The agreement was never intended to require the state to acquire property which it would not normally acquire if it were financing the entire project itself.
Section 4602(b) of 42 U.S.C.A. is significant. It provides:
"Nothing in this chapter shall be construed as creating in any condemnation proceeding brought under the power of eminent domain, any element of value or of damage not in existence immediately prior to [the effective date of the act]."
The plain meaning of this provision is that the act neither adds to nor takes from elements of value or damage in the law of eminent domain as developed through the years by the General Assemblies and by the courts of the respective states.[1]
See also In re Minneapolis Community Development Agency, 417 N.W.2d 127, 131 (Minn.App. 1987) ("URA does not create a right to compensation for appellant's billboards, where state law precludes compensation, because the billboards are removable personal property.")
Eagle's reliance on the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, U.S.C. § 4652, as codified in T.C.A. § 29-16-114(b) and (c)(1) is misplaced. It relates only to structures which are real property, not to outdoor advertising billboards because they are removable.
Eagle's outdoor advertising structure is governed, in the case at bar, by the Uniform Relocation Assistance Act of 1972, codified as T.C.A. § 13-11-101, et seq., which, as pertinent, defines "outdoor" advertising display or displays" as a "business." The statute also provides that when such business or display is displaced, compensation for such displacement shall be the cost of moving. It was pursuant to the provisions of this statute that Eagle was paid the sum of $13,292 by the state as moving cost of its billboard. Eagle does not address the provisions of this statute in its brief.
The issues are found in favor of the Appellee. The judgment of the trial court is affirmed. The cost of this appeal is taxed to the Appellant and the case is remanded to the trial court for any further necessary proceedings.
GODDARD, P.J., and FRANKS, J., concur.
NOTES
[1] The Tennessee version of 42 U.S.C.A. § 4602(b), quoted by the South Carolina court, is codified at T.C.A. § 13-11-104.