# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 20, 2002 Session

## ANR PIPELINE CO., COLONIAL PIPELINE CO., COLUMBIA GULF TRANSMISSION CO., ET AL. v. TN BOARD OF EQUALIZATION

### Direct Appeal from the Tennessee State Board of Equalization

---

**No. M2001-01098-COA-R12-CV**
**No. M2001-01117-COA-R12-CV - Filed December 19, 2002**
**No. M2001-01119-COA-R12-CV**

---

Pipelines for the transport of petroleum products were installed sub-surface by various companies which acquired easements over affected freeholds. These pipelines were assessed as real estate for purposes of taxation. Petitions for Review were filed by the Pipeline Companies alleging that the pipelines were personal property. The decision of the Board of Equalization is reversed.

**Tenn. R. App. P. 12(I) Direct Appellate Review; Judgment of the Tennessee State Board of Equalization is Reversed and Remanded**

BEN H. CANTRELL, P.J., M.S., PATRICIA J. COTTRELL, J. and JOHN B. HAGLER, SP. J.

Harlan Dodson, III, and Paul Parker, Nashville, Tennessee, for the appellant, ANR Pipeline.

Everett B. Gibson, Memphis, Tennessee, and Ron L. Quigley, Atlanta, Georgia, for the appellant, Colonial Pipeline Company.

Brigid M. Carpenter, Nashville, Tennessee, James W. McBride, Washington, D.C., and Stephen Dorr Goodwin, Memphis, Tennessee, for the appellants, Columbia Gulf Transmission, East Tennessee Natural Gas, Midwestern Gas Transmission, Southern Natural Gas Company, Tennessee Gas Pipeline Company, Texas Eastern Transmission Corporation, Texas Gas Transmission Corp., and Trunkline Gas Co.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Mary Ellen Knack, Assistant Attorney General; Robert Lee, Staff Attorney, for the appellee, State of Tennessee.

James Charles and Jennifer Clinard Surber, Nashville, Tennessee, for Intervenor, Metropolitan Government of Nashville & Davidson Co.

Jean Dyer Harrison, Nashville, Tennessee, and Jeffrey Dean Moseley, Franklin, Tennessee for Intervenor, Williamson County Government.

# OPINION
# PER CURIAM

The Office of State Assessed Properties [OSAP][1] classified the appellants' pipelines as real property, as contrasted to personal property, for purposes of *ad valorem* tax assessments, beginning in 1997. These actions are the genesis of the resulting administrative proceedings initiated by the affected companies[2] [Pipeline Companies] contesting the validity of the classification.

In accordance with Tenn. Code Ann. § 67-5-1505 the Board of Equalization [Board] appointed an Administrative Law Judge [ALJ] to conduct a hearing of the consolidated cases. By separate Orders issued in January 2000, the ALJ upheld the classification by OSAP.[3] This decision was appealed to the Assessment Appeals Commission which certified the classification question to the Board.

The final administrative authority for the assessment of all centrally-assessed utilities[4] is the Board of Equalization, *see* Tenn. Code Ann. § 67-5-1328, which, in March 2001, issued an opinion sustaining the ruling of the ALJ. As provided by Rule 12, Tenn. R. App. P., the Pipeline Companies appealed directly to this court. Presented for review is the dispositive issue of whether the pipelines are real or personal property. Our review is *de novo* on the record with no presumption of correctness. Tennessee Code Annotated § 4-5-322(h) provides the bases for the modification or reversal of the Board's decision.

## Analysis

The classification of property as real or personal is important because of decisions of the Board to equalize the level of assessment of tangible personal property of centrally-assessed utilities such as the Pipeline Companies, and the level of assessment of locally-assessed tangible personal property. Since 1997 the Board has ordered a 15 percent reduction in the assessed value of centrally-assessed tangible personal property in order to bring it to the same level of assessment as locally-assessed tangible personal property. For this reason, it has been necessary for OSAP to determine the legal nature of the properties owned by the Pipeline Companies in Tennessee. The Pipeline

---

[1] An adjunct agency of the Office of the Comptroller.

[2] ANR Pipeline Co.; Colonial Pipeline Co.; Columbia Gulf Transmission Co.; East Tennessee Natural Gas Co.; Midwestern Gas Transmission Co.; Texas Eastern Transmission Corp.; Trunkline Gas Co.; Texas Gas Transmission Corp.

[3] The ALJ went further and ruled that certain surface equipment was real property notwithstanding the stipulation of the parties to the contrary.

[4] These are entities such as railroad, telephone companies and pipelines which are assessed by OSAP rather than by local county assessors. Tenn. Code Ann. § 67-5-1301.

Companies and OSAP agreed on the classification of all of the companies' property except the "pipelines". The parties *stipulated* that the only issue before the Administrative Judge was *the proper classification of the pipelines.* The parties further stipulated that the appropriate definition of "pipelines" is contained in the Uniform System of Accounts promulgated by the Federal Energy Regulatory Commission. Account No. 367 of the system of accounts defines the elements of "transmission system mains." Among other things, the items listed under the definition of "pipelines" include valve operating mechanisms, bypass assemblies, cathodic protection equipment, pipe coding, and the pipes and fittings.

The business of the Pipeline Companies implicates interstate commerce and thus is regulated by Federal law for the most part. To install a pipeline, easements must be acquired from affected landowners. These easements provide that for a recited consideration the owner(s) of the affected real estate conveys to the pipeline company an easement to "lay, construct, maintain, operate, alter, repair, *replace, move, and remove* pipe lines. . . . along a route to be selected by [the Pipeline Company] under, upon, over, and through the lands of grantor . . ." The easement further provides that the "[Pipeline Company] agrees to pay to the owner of said land and to any tenant or lessee thereof . . . any damages to fences, growing crops, and timber which may be covered by constructing . . . replacing . . . *moving or removing* the pipelines . . ."[5] (Emphasis supplied).

As found by the Board and not disputed, the salient facts may be quickly summarized.

> Colonial Pipeline transports petroleum products through over 5,000 miles of pipeline running from Texas to New Jersey, including 387 miles of main and stub lines in eleven Tennessee counties. The other companies transport natural gas through equally extensive networks connecting supplies from the Gulf of Mexico to distributors and distribution sites located throughout the eastern United States. These networks range from 4 miles (Midwestern) to 1,202 miles (Tennessee Gas) in Tennessee. Total assessments of the portion of appellants' property allocated to Tennessee, are about $250 million.
>
> The pipe is coated steel installed generally in 40 foot sections and having diameters up to 40 inches. Joints are carefully welded and recoated. Lines are buried typically under 30 inches or more of soil and lie on a prepared bed of gravel. At periodic intervals there are valves and surface pumping and distribution stations. With proper "cathodic" protection (electric currents that inhibit corrosion), the life of the pipeline is indefinite. It is infrequently moved, and removal usually occurs because of changes in population or traffic patterns at the surface that require rerouting or replacement of pipe sections. It is usually not economically feasible to reuse removed pipe elsewhere

---

[5] The easement expires when no longer used for the purpose expressed.

in the pipeline, though scrapped pipe often finds its way into a variety
of surface uses, such as supports for billboards.

Maintenance of pipelines is an ongoing, constant necessity. Pipe damaged in various ways, such as by corrosion, or struck by heavy equipment, must be replaced. If pipelines are replaced, removed, or repaired the land is always restored, and pipelines can be removed without damage to the real estate. Portions of a pipeline are routinely moved to facilitate the construction of highways and buildings, and for other reasons, the chief one being that the landowner requests the removal.

The parties agree that the resolution of this appeal is controlled by application of the following definitions of real and personal property contained in the property tax provisions of the Tennessee Code:

> (9)     "Real property" includes lands, tenements, hereditaments, structures, improvements, movable property assessable under § 67-5-802, or machinery and equipment affixed to realty (except as otherwise provided for herein) and all rights thereto and interests therein, equitable as well as legal.

> (12)    "Tangible personal property" includes personal property such as goods, chattels, and other articles of value which are capable of manual or physical possession, and certain machinery and equipment, separate and apart from any real property, and the value of which is intrinsic to the article itself.

Tenn. Code Ann. § 67-5-501.

The pipeline does not enhance the value of the freehold, and is not an improvement to the freehold. It is "separate and apart" from the freehold; the owners of the land traversed by the pipeline have no claim or interest in the pipes or appurtenant equipment. The pipeline is not affixed to the land in the legal sense, because it can be, and sometimes is, moved. In *Dudzick v. Lewis*, 135 S.W.2d 496 (Tenn. 1939) the Court explained that

> [i]t is now the generally recognized rule that the manner of annexing chattels to realty is not the controlling consideration in determing whether or not the chattels becomes a part of the realty. The question of the intention of the parties to a lease is generally held to be controlling in determining in doubtful cases whether or not a chattel annexed to realty becomes a part thereof and the property of the lessor.

We agree that simply because the pipeline is buried three feet underground is not determinative of the issue. The intention of the parties control. We do not believe that upon completion of the construction of the pipeline title thereby passed to the landowner as it would have if the Board's position is the correct one.

In this jurisdiction, the law of fixtures is controlling of the issue at Bar.

> In Tennessee only those chattels are fixtures which are so attached to the freehold that, from the intention of the parties and the uses to which they are put, they are presumed to be permanently annexed, or a removal thereof would cause serious injury to the freehold. ***Johnson v. Patterson***, 13 Lea [81 Tenn.], 626; ***De Graffenreid v. Scruggs***, 4 Humph. [23 Tenn.], 451, 40 Am.Dec.658; ***Union Bank & Trust Co. v. [Fred W.] Wolfe***, 114 Tenn. 255, 86 S.W. 310, 108 Am.St.Rep., 903, 4 Ann.Cas. 1070. The usual test is said to be the intention with which a chattel is connected with realty. If it is intended to be removable at the pleasure of the owner, it is not a fixture.

***Hickman v. Booth***, 131 Tenn. 32, 173 S.W. 438 (1914). *See also* ***Harry J. Whelchel Co. v. King***, 610 S.W.2d 710 (Tenn. 1980); ***Memphis Housing Authority v. Memphis Steam Laundry-Cleaner, Inc.***, 463 S.W.2d 677, 679 (Tenn. 1971).

The law of fixtures concerns the relative priorities of ownership to a particular item of personal property. *See, e.g.,* ***Green v. Harper***, 700 S.W.2d 565 (Tenn. Ct. App. 1985) (dispute between lessor and former lessee over property previously installed on the premises by lessee wherein it was stated that the question was one of intention and "relation of the parties"); ***Harry J. Whelchel Co. v. King,*** *supra,* (question of intent and "character of the parties"). There can be no doubt, as we have said, that the intent of the parties is the single dispositive factor in determining whether an item of personal property is a fixture, and thus will be deemed to be a part of the realty upon which it is attached. ***Memphis Housing Authority v. Memphis Laundry,*** *supra*; ***Knoxville Gas Co. v. W.I. Kirby & Sons***, 32 S.W.2d 1054 (Tenn. 1930); ***Hubbard v. Hardeman County Bank***, 868 S.W.2d 656 (Tenn. Ct. App. 1993).

To belabor the point, the parties' intent is the dominant theme in practically all of the cases addressing the law of fixtures. But not even this single statement is capable of application in all situations owing to the difficulty encountered in attempting to discover intent, particularly in cases where, as here, the issue is raised by the taxing authority in purported reliance upon a statute. As between the landowner and the Pipeline Company there can be no doubt that the pipelines are personal property.[6] It was clearly never intended by either party that the pipes – obviously personal property before being rolled into the trench – would not lose that status simply by being covered over to enable the landowner to resume the surface use of his land. Otherwise, the pipeline became the property of the landowner subject only to the provisions of the easement, an obviously unintended result. The statutory definition of real property – with respect to the taxing power – is not essentially different from the common law definition; "affixed to the realty" is the operative statutory phrase, which implicates intent. *See,* ***Dudzick***, *supra.*

---

[6] The pipelines are not trade fixtures, which are items brought upon the land by a tenant for the purpose of carrying on a business. They remain personalty. This principle is limited to situations involving a landlord and tenant relationship. *See,* ***Saunders v. Stallings***, 52 Tenn. 65 (1871).

The Pipeline Companies exercise complete dominion and control over the pipe in the ground, and can move it however and whenever they see fit.  There is no evidence that the parties intended or expected that the pipelines would ever become a permanent fixture upon the freehold.  No landowner can seriously claim ownership of the pipe simply because it happens to be buried in his land.  To the contrary, the pipe is treated as property belonging to the Pipeline Companies which they can remove at their pleasure.  The easements so provide.  This single fact is sufficient to prove the intent of the parties and thus mandate that the pipelines are personal property under Tennessee law. ***Harry J. Welchel Co. v. King***, *supra*; ***Memphis Housing Authority v. Memphis S. L. C.***, *supra.*

The decision of the Board is reversed and this case is remanded to the Board for the entry of an order that the pipelines and surface equipment shall be treated as personal property for purposes of *ad valorem* taxation.  Costs are assessed to the appellee.

PER CURIAM