IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 3, 2015

## STATE OF TENNESSEE v. ELVIS STRICKLAND

**Appeal from the Criminal Court for Shelby County**
**No. 13-05123     James C. Beasley, Jr., Judge**

---

**No. W2015-00153-CCA-R3-CD  -  Filed December 22, 2015**

---

The defendant, Elvis Strickland, was convicted by a Shelby County Criminal Court jury of aggravated arson, a Class A felony, and was sentenced to forty years in the Department of Correction. On appeal, he challenges the sufficiency of the convicting evidence. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Stephen C. Bush, District Public Defender; Tony N. Brayton (on appeal) and Michael Johnson (at trial), Assistant Public Defenders, for the appellant, Elvis Strickland.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted for aggravated arson as a result of his throwing a "Molotov cocktail" into Coda's Liquor Store in Memphis, Tennessee, on May 31, 2013.

Malvin Osborne testified that he was working as a clerk at Coda's Liquor Store on the night in question when he received a complaint from a customer that caused him to go outside into the parking lot. Mr. Osborne observed the defendant in the parking lot begging for money and "bent over" in a customer's car "like he was rummaging through, looking for stuff." Mr. Osborne ordered him to leave the property. The defendant cursed

at Mr. Osborne, walked off the liquor store lot and onto the parking lot of the business next door, and threatened to burn the "M.F. [l]iquor store down" with Mr. Osborne in it. Mr. Osborne went back inside the liquor store, unfazed by the threat.

Mr. Osborne described that the liquor store was set up with a lobby and then the clerks were separated from the customers by bullet-proof glass windows. Customers entered the lobby and spoke with the clerk through an intercom system, and business was transacted through a currency tray and pass-through drawer.

Mr. Osborne testified that, about forty-five minutes after his initial encounter with the defendant, as he was standing near the transaction window inside the store talking to a customer named Orlando, he saw the door into the lobby open and the defendant throw a "Molotov cocktail" inside, setting the right-hand side of the lobby on fire. The bottle was on fire when the defendant threw it into the store, and the fire bottle hit the bullet-proof glass window, hit the countertop shelf, and fell to the floor. Mr. Osborne recalled that the flame was at least three feet tall, but customers quickly came inside and threw water on the flames to try to extinguish the fire. Mr. Osborne and some of the customers also used wet shirts to "beat[] the flames down." They were able to extinguish the fire inside the store before the fire department arrived, but there was still fire in the parking lot where fluid had dropped.

Mr. Osborne described how the fire damaged several parts of the liquor store. He said that the window that separated customers from employees was soiled by smoke or soot and that the heat from the fire greatly enlarged a small crack that had been in the window. The wood shelf that was part of the window was "scorched," and there was smoke damage to the Formica countertop under the window. The floor in the lobby was burned. It turned white from where the heat "raised the pigment out of the floor." The fire left numerous, dark burn marks on the accent rug in the lobby.

Dominique Coda, the owner of Coda's Liquor, testified that the defendant threw a "fire bomb" through the front door of the liquor store, which hit the wall and ignited a fire inside the store. The flames reached the height of the ceiling before Mr. Coda, Mr. Osborne, and several customers extinguished it. Coda's Liquor had been in good condition, with no visible damage, prior to the incident. After the incident, the store appeared "burnt, [with] black marks, black streaks, [and] smoke." Mr. Coda testified that the fire burned the tile floor, a rug, glass windows, and the counter money tray. There was a black streak on the floor, going "all the way to the counter and . . . up the counter where we wait on people." On cross-examination, Mr. Coda described that the damage to the store was not major and consisted of mostly smoke damage, dirt, and debris. He also said that the glass was "just darkened."

2

Orlando Carradine testified that he was a customer inside the liquor store when the defendant threw a "fire bomb" inside, hitting one of the glass windows. He heard the defendant say, "That's what I think about you" as he threw the fire bomb. The flames went up two to three feet in height. Mr. Carradine was not burned by the fire, but he felt the heat from it.

Nate Lenow III, an officer with the Memphis Police Department, responded to the scene. When he entered the store, he smelled gas and observed burnt carpet, discoloration to the plastic partition separating the clerks from the customers, and a burnt plastic bottle on the floor. The fire was already out when he arrived. Officer Lenow assisted with the defendant's arrest the next day.

Agent Riley Lewis with the Tennessee Bureau of Investigation ("TBI") Crime Laboratory testified as an expert in fire debris analysis. Agent Lewis stated that she examined the vapors on a soiled cloth discovered on the store's west counter near the glass partition for ignitable liquids. The results were negative for any ignitable liquid. However, Agent Lewis explained that a negative finding does not "eliminate the possibility that an ignitable liquid was used." She elaborated that a negative finding could mean that an ignitable liquid was never present, or that the ignitable liquid evaporated or degraded prior to examination. She said that water can also affect the finding of the presence of an ignitable liquid on an object.

Willie Irons, an investigator with the Memphis Fire Department, responded to the scene. He spoke with several firefighters and took photographs. He smelled gasoline or diesel fuel in the store, but the fire was extinguished. He also observed soot on the windows inside the store. Mr. Irons used a sterile cloth to soak up liquid from the customer pay tray and shelf area to send to the TBI for testing. During his investigation, Mr. Irons determined that the defendant started the fire by throwing a small plastic bottle with flammable liquid and an ignited paper or cloth wick into the store.

Following the conclusion of the proof, the jury convicted the defendant as charged of aggravated arson.

## ANALYSIS

The defendant argues that the evidence is insufficient to sustain his conviction because the fire did not cause damage to any structure. He asserts that the only damage was burn marks on an area rug and soot on a window.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is

3

"whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

As relevant here, aggravated arson occurs when a person knowingly damages any structure by means of fire or explosion without the consent of all persons who have a possessory, proprietary or security interest in the structure and where one or more persons are present therein. See Tenn. Code Ann. §§ 39-14-301(a)(1), -302(a)(1).

The defendant does not contest the evidence proving that he started a fire inside Coda's Liquor Store. Instead, he asserts that the fire did not cause damage to any structure as required by the statute. Distinguishing his case from State v. Matthew Lee Rogers, No. E2005-01142-CCA-R3-CD, 2006 WL 2716870 (Tenn. Crim. App. Sept. 25, 2006), a case in which this court ruled that a defendant's damage to wall-to-wall carpeting was tantamount to damage to the structure, the defendant claims that the only thing that was damaged in his case was an accent rug which was a "chattel" not "a

4

permanent and integral part of the structure." The State disagrees, asserting that there was sufficient evidence for the jury to conclude that the fire damaged the structure itself, not merely the accent rug. We agree with the State.

As we begin our review, we note that this court's analysis in Matthew Lee Rogers is pertinent to this issue:

> We begin our review by noting that the term "structure" is not defined by the arson statute. However, the committee comments to the arson statute denote that the current language of "damages any structure" replaced prior language, which covered "any house, or outhouse, or any building, or any other structure. . . ." See [Tenn. Code Ann.] § 39-14-301. Also useful to our analysis is the dictionary definition of structure. According to Black's Law Dictionary, structure is any "construction, production, or piece of work artificially built up or composed of parts purposefully joined together." Id. at 1464 (8th ed. 2004). According to Webster's II New College Dictionary, structure is "something constructed, such as a building." Id. at 32 (3rd ed. 2005). Notably, our interpretation of the term "structure" is restricted to the natural and ordinary meaning of the language used in the statute. See State v. Denton, 149 S.W.3d 1, 17 (Tenn. 2004); Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998). We are also mindful that our criminal code provisions should be "construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000) (quoting Tenn. Code Ann. § 39-11-104 (1997)).

> While there are no Tennessee cases on point, certain out-of-state cases are helpful to our review of this issue. In In re Jesse L. 221 Cal. App. 3d 161 (Cal. Ct. App. 1990), the appellate court was asked to determine whether burn damage to the floors, counters, and light fixtures was sufficient evidence of structural fire damage to support a conviction of arson. After analyzing portions of its civil code, the court determined that "a fixture is a thing, originally personal property, but later affixed or annexed to realty so that it is considered real property." Id. at 167. The court then held that "a fixture . . . becomes part of the structure to the extent that a burning or charring or destruction by fire is all that is required to constitute a burning sufficient to support a conviction of arson. . . ." Id. at 168. In People v. Lee, 24 Cal. App. 4th 1773 (Cal. Ct. App. 1994), the court was presented with the issue of whether burn damage to wall-to-wall carpeting inside a house was sufficient to convict the defendant of arson.

5

The court noted that personal property or chattel became a fixture when "it would become essential to the ordinary and convenient use of the property to which it was annexed." Id. at 1777 (quoting M.P. Moller, Inc. v. Wilson, 8 Cal. 2d 31, 38 (Cal. 1936)). The court further noted whether personal property had lost its character as personalty and had become a permanent and integral part of the structure was a question of fact to be determined by the jury. Id. at 1777-78. The court concluded that "the jury could reasonably find the carpet in this case was a fixture, i.e., originally personal property which was affixed to the real property so securely and permanently it became an integral part of the structure." Id. at 1778.

We find the analysis and reasoning set forth in the aforementioned cases to be persuasive and applicable to this case.[1] In this case, evidence established that the defendant set fire to a piece of paper, slid it under the door, thereby causing some burn damage to the wall-to-wall carpet inside an occupied apartment building. By their verdict, the jury determined that the damage to the carpet was tantamount to damage to the structure of the apartment building. In our view, it is not unreasonable for the jury to find that the carpet in this case was a permanent and integral part of the structure. Therefore, based upon the evidence presented in this case, we conclude that a reasonable jury could find the defendant guilty of aggravated arson.

Matthew Lee Rogers, 2006 WL 2716870, at *4-5.

We conclude that there is sufficient evidence for the jury to find that the fire damaged the structure itself and, thus, that the defendant committed aggravated arson. Mr. Osborne described that the flames burned the floor, turning it white from where the heat "raised the pigment out of the floor." Mr. Coda likewise testified that the fire burned the tile floor. Mr. Osborne testified that the heat from the fire greatly enlarged a small crack that had been in the window that separated customers from employees. The wood shelf that was part of the window was "scorched," and there was smoke damage to the

---

[1]Tennessee courts have considered a "fixture" as "[a]n article in the nature of personal property which has been so annexed to the realty that it is regarded as part of the land." State ex rel. Comm'r v. Teasley, 913 S.W.2d 175, 177 (Tenn. Ct. App. 1995) (citing Black's Law Dictionary). However, only those chattels/personal property are fixtures "which are so attached to the freehold that, from the intention of the parties and the uses to which they are put, they are presumed to be permanently annexed, or a removal thereof would cause serious injury to the freehold." Memphis Housing Authority v. Memphis Steam Laundry-Cleaner, Inc., 463 S.W.2d 677, 679 (Tenn. 1971); see, e.g., Murphy v. State, 426 S.W.2d 509, 514 (Tenn. 1968) (determining under the facts of the case, that a mobile home was a structure since it had become a fixture attached to real estate).

Formica countertop under the window. Mr. Coda testified that, after the incident, the store appeared "burnt, [with] black marks, black streaks, [and] smoke." Mr. Coda summarized that the fire burned the tile floor, glass windows, and the counter money tray. There was a black streak on the floor, going "all the way to the counter and . . . up the counter where we wait on people."

Similarly to the wall-to-wall carpet in <u>Matthew Lee Rogers</u>, the liquor store's floor, windows, and countertop are fixtures that have become part of the structure itself such that damage to them "was tantamount to damage to the structure." 2006 WL 2716870, at *4-5. Viewed in the light most favorable to the State, we conclude that the evidence is sufficient for a reasonable trier of fact to find that the defendant committed aggravated arson.

## <u>CONCLUSION</u>

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

7